(Decided 3d December, 1869.)

---

ROBERT MOORE and others, trading as ROBERT MOORE & BROTHER, *vs.* LOUISA SCHULTZ, by her next friend, PETER SCHULTZ.

*Trespass de Bonis asportatis—Measure of Damages.*

Where the goods of a person engaged in the tailoring business were unlawfully seized, under an attachment, which was finally quashed, and the goods returned greatly deteriorated in value; in an action to recover

damages for the unlawful seizure, it is competent for the jury, in addition to the ordinary measure of compensation, and the allowance for aggravation, to allow, as special damages, for the destruction and loss of the business of the plaintiff, to the extent of the loss actually sustained, if it be made to appear that such destruction and loss was the natural consequence of the trespass.

In assessing damages in such a case, where, upon the theory of the defendant's prayer, the plaintiff was entitled to recover damages to the extent of the depreciation in value of the property seized by the sheriff, from the time of the seizure until the delivery to the plaintiff, the jury is not restricted to the allowance of interest, during the time of their detention, but may, in their discretion, award interest on the value down to the time of verdict.

APPEAL from Baltimore City Court.

This was an action of *trespass de bonis asportatis,* brought by the appellee, a married woman, through her next friend, against the appellants, for attempting, by means of attachment on original process, to subject her separate property to the debt of her husband.

At the trial below, Louisa Schultz, the plaintiff, testified that in the latter part of 1865, she was carrying on the tailoring business on her separate account, having started on November 22d, with a stock of goods for which, with some furniture, she paid, of her own money, $500 cash. Her husband had been previously engaged in the same business, but had been forced to assign his stock in trade in satisfaction of an old debt, for which the creditor pressed for payment, whereupon she borrowed from her brother $500, bought back the goods, and undertook the business on her own account. With other money of her own, she added largely to her stock, employed hands to work it into clothing, until it was worth from $1300 to $1600.

On December 27th all was attached at suit of the appellants against her husband. She promptly filed her petition as claimant, upon which the attachment was finally quashed, and her property restored; not, however, until

July, 1868; by which time the goods had so deteriorated as to be worth almost nothing.

She further testified, that when the sheriff levied on the goods, one of the defendants, and a young man with him, were present directing the levy; that the sheriff's officers took a large quantity of goods, and appraised them over $600 (the debt being $249.40), when the young man told the sheriff to take all the goods, and to reduce the appraisement, so as to take the whole, and the sheriff accordingly reduced the appraisement, and added in all the other goods; that one of the defendants was standing by during all this time. That the young man also rummaged the drawers in her bureau, and other places; that when the goods were all taken and put on a wagon, the said defendant asked Schultz if he would now pay what he owed, to which he replied he had no money, but would pay as soon as he could.

She also testified that the defendant was expressly warned, while making the levy, that the goods did not belong to Peter Schultz, but were her private property, but he said they would take them anyhow. The plaintiff's counsel then asked her to state what effect the taking of the goods had on her business. To this question the defendants excepted, as calculated to bring to the consideration of the jury damages, which were indefinite, remote and uncertain. But the Court being of opinion that the question was legal, said that the consequences to her of the taking of the goods were proper to be considered by the jury, and allowed the question to be put. This ruling is the subject of the defendant's first exception. The answer to the question was, that by the seizure and carrying away of her goods, her business was entirely broken up, and she was obliged to quit business, and leave Market Space, and rent rooms in Albemarle street, where she and her husband, by sewing, supported themselves and two children.

Other evidence was offered, showing the great depreciation in the value of the goods, between the time of their seizure by the sheriff, and their return to the plaintiff.

Robert Moore, one of the defendants, testified that he never was in the store spoken of; was not in Baltimore at the time the attachment was issued and laid, and had nothing to do with the appraisement. Charles Moore, another defendant, also testified that he was not present at the levy or appraisement, nor at any time with the sheriff or his deputies; knew nothing of the matter, except that he made the affidavits and gave the bond upon which the attachment issued, and heard that the goods had been taken accordingly by the sheriff. John Moore, the remaining partner and defendant, testified that he was not present in the store from the time the sheriff went to make the levy until he had removed the goods; was not present at the levy or appraisement. Being cross-examined, he stated, he was in the store shortly before the levy; could not remember how long before, nor whether it was at the beginning, middle, or end of the month.

The defendants further offered in evidence, in mitigation of damages, two bills of sale, by which the property passed from Peter Schultz to Anne Zametzer, his creditor, and from her to Louisa Schultz, and certain testimony taken from the record of the attachment suit.

Louisa Schultz and Peter Schultz being recalled by the plaintiff's counsel, testified that they recognized Mr. John Moore as the defendant, who was certainly present, directing the levy.

The evidence being closed, the defendants offered the following prayers:

1. If the jury believe, from the evidence in the case, that Peter Schultz, the husband of the plaintiff, was, at the time of issuing the attachment offered in evidence, indebted to the defendants, and if they, in pursuance of what they conceived to be a just claim, and believing they

had a legal right to have the same satisfied by the property in question, by reason of the two bills of sale offered in evidence being void, as having been made for the purpose of defrauding the creditors of Peter Schultz, caused the attachment offered in evidence to be issued and laid on said goods, without abusing or perverting its true object, or intending or meaning to abuse or pervert its true object, then the plaintiff is not entitled to recover more than the damages resulting by reason of the depreciation of the property seized by the sheriff from the time of the seizure until the delivery thereof by the sheriff to the plaintiff, with interest on the value of the goods for the time they were detained.

2. If the jury believe the facts mentioned in the first prayer, and should find a verdict for the plaintiff, they are not to take into consideration any compensation for the services of her attorney.

These prayers the Court (SCOTT, J.,) refused to grant, but instructed the jury that "he would have them upon the whole evidence to find what damages the plaintiff really sustained."

To the refusal to grant these prayers and to the instruction given by the Court, the defendants excepted, and the verdict and judgment being against them, they appealed.

. The cause was argued before BARTOL, C. J., MILLER, ALVEY and ROBINSON, J.

*Patrick M'Laughlin*, for the appellants.

*McHenry Howard* and *J. H. Magruder*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

The questions raised upon the exceptions in this case relate exclusively to the measure of damages that the appellee was entitled to recover of the appellants.

The declaration is for trespass *de bonis asportatis*, and alleges, as special damage to the appellee, consequent upon the taking and carrying away of the goods, that her business was broken up, and that she was reduced to poverty and deprived of the means of support.

It appears that the appellants, as creditors of the appellee's husband, had sued out an attachment and seized certain goods as belonging to their debtor, which were claimed at the time as belonging to the appellee, and the right to seize which, failing to be sustained, they were afterwards returned to the appellee in a greatly damaged condition. And the question is, upon all the facts and circumstances of the case, to what measure of damages was the appellee entitled.

Ordinarily, in actions of this character, the plaintiff is entitled to recover, if there be no circumstances of aggravation, the value of the goods taken, if they be not returned, or if returned, the amount of the injury done to them, with interest from the time of the taking down to the trial. This is generally considered as the extent of the damages sustained, and is deemed legal compensation, which refers, however, only to the injury to the property, and not to any collateral or consequential damages resulting to the owner by the trespass. 6 *Pet* , 272. But if the trespass be committed in a wanton and aggravated manner, indicating malice, or a disregard of the rights of others, and the circumstances of the case afford no justification, in addition to the measure of compensation just stated, the jury will be allowed to make reparation, not only for the loss of property, but for outraged feeling and reputation; and this may be carried to the extent of setting a public example to deter others who may be alike evilly disposed. The exercise of this power of inflicting damages for aggravation is, however, always left to the discretion of the jury, as it is dependent upon the particular circumstances of each case, and for it no criterion can be

prescribed, except that the damages assessed in respect to aggravation, should not be disproportioned to the enormity of the case.

But it is contended that, in addition to the ordinary measure of compensation, and the allowance for aggravation, it was competent for the jury in the case to allow, as special damages, for the breaking up and loss of the business alleged in the declaration; and hence the question proposed to the witness in the first exception was proper.

We think the Court was right in allowing the question to be answered. The appellee had alleged the breaking up of her business as special injury, and she was entitled to show that it was the natural consequence of the trespass; and if successful in doing so, she was entitled to compensation to the extent of actual loss sustained. For if in an action of trespass *quare clausum*, the plaintiff was allowed to give evidence of damage to his crop, occasioned by reason of the defendant driving away his servants, as was done in *Johnson vs. Courts*, 3 *Har. & McH.*, 510, we can perceive no reason why the appellee should not be allowed to show injury to or destruction of her business by the taking of her goods. The two cases cannot be distinguished.

We think the Court was also right in rejecting the appellants' first prayer. It excluded from the consideration of the jury the special damage alleged, and confined the allowance of interest to the time of the return of the goods; which rendered it erroneous.

The Court was equally right in rejecting the appellants' second prayer. There was no evidence in the cause in relation to counsel fees, and, consequently, there was no such subject before the jury.

As to the instruction given by the Court, though not as definite as it might have been, we think, in view of the manner in which the case was presented, and the scope of

inquiry open to the jury in estimating the damages, that it affords the appellants no ground of complaint. The Court told the jury, upon rejection of the last prayer of the appellants, that it " would have them, upon the whole evidence, to find what damages the plaintiff *really sustained.*" This, taken in its literal sense, as we may suppose was done by the jury, was rather more restrictive of the *quantum* of damages than the law would allow, if the jury believed that there were circumstances of aggravation in the case. By the terms of the instruction, all damages, merely punitive, would seem to have been excluded; and hence the appellants have no cause to complain.

*Judgment affirmed.*

(Decided 6th December, 1869.)