## SMITH *et ux. vs.* EUBANKS & HILL.

1. While inartificially drawn, the declaration in this case was, in effect, an action on the case for damages consequent upon the breaking of the terms of a lease, and such action sounds in tort. The contract of lease is set out by way of inducement, and the breaches of duty thereunder are, first, in failing to put the property in such condition as to be tenantable for the purpose for which it was leased, and which the defendants had agreed to do; and, second,

in turning the plaintiffs out of possession before the lease had expired.

2. In such an action, a general statement on the part of one of the plaintiffs, while a witness on the stand, that he was damaged three thousand dollars, was inadmissible.

(a.) But the court does not certify this ground of the motion before granting the rule *nisi.* The motion for new trial, the rule *nisi* thereon and qualifications thereof, are matters of record; and where the bill of exceptions and record differ in relation to matters properly of record, the latter will prevail.

(b.) The witness could swear to his daily receipts and profits, to show the amount of his damage.

3. Where counsel for defendants had drawn from one of the plaintiffs, as a witness on the stand, the names of a large number of his customers, and night was approaching, the fact that the judge jestingly remarked, as a reason for adjourning, that counsel seemed to be taking a census, and he would adjourn the case until next day, was immaterial, and could not reasonably mislead the jury or hurt the defendants. This is unlike 61 *Ga.*, 359.

4. It was legitimate to prove damage from want of water, which, according to plaintiffs' version of the contract of lease, defendants had agreed to supply, the purpose of the lease being for a wagon and stock yard.

(a.) Failure to comply with the terms of the lease, and damage therefrom, are enough to set out in the declaration, without specifying every item.

5. A husband having made the contract of lease individually, but having taken out a warrant to dispossess plaintiffs as agent for his wife, in an action for damages based on the failure to perform the duties imposed by the contract, and on the eviction under the warrant, the husband and wife were properly joined as joint tort-feasors, unless a plea of misjoinder had been entered and established by legal proof.

6. There was no error in charging, "You will look to see if there are breaches of contract. Plaintiffs complain that it was broken in two ways: first, that defendants were to erect certain buildings, stalls, blacksmith shop, and supply plenty of water, and that this was not done. Did defendants fail in any one or more of these? Then there was a breach of contract, and to the extent of plaintiffs' damage, they would be entitled to recover."

7. It was error to charge that, in estimating the damages resulting from an unlawful and wrongful eviction of a lessee prior to the expiration of his lease, the jury could consider profits made after the eviction, by parties subsequently occupying the premises, as a basis of calculation.

(a.) Evidence of patronage after the eviction and of the number of

wagons, cattle, etc., received in the yard thereafter, would be ad-admissible to show that the railroads built through the surround-ing territory had not materially lessened the wagoning and cattle and sheep driving which had previously existed, in rebuttal of proof to the contrary; but the probable profit of the evicted lessee could not be measured by the profits of their successors.

8.   Where a warrant to dispossess certain persons as tenants holding over, was sued out, and a counter-affidavit and bond given, but subsequently, the defendants relinquished the possession under protest, no harshness or oppression of any sort having been re-sorted to, while the persons evicted might sue and recover legiti-mate damages flowing therefrom, if they were not, in fact, tenants holding over, still, it was error to submit to the jury the question of oppressiveness in the eviction.

(*a.*) The measure of damages in such a case would be what the les-sees evicted could have cleared had the eviction not taken place, but they could not recover punitive or exemplary damage for op-pression or harsh treatment, in the absence of any evidence thereof.

April 25, 1884.

Eubanks & Hill brought suit against David Smith and his wife, Jennie Smith. The body of the declaration was as follows:

"On the first day of July, 1879, plaintiffs leased from defendants for one year next ensuing the following property (describing it); and the rental to be paid for said property was two hundred and forty dol-lars, payable monthly. Defendants undertook and agreed to imme-diately put said premises in good, tenantable condition, to furnish a good business house for a grocery store, a separate room for a bar-room, a separate room for a bed-room, a good house for wagoners, good stalls sufficient to hold one hundred head of horses; to dig wells, to furnish an abundant supply of fresh, pure water for man and beast, to run a partition fence through said lot, making two lots thereof, one for wagons and one for stock; to supply all the doors with good locks, and to build on said lot a blacksmith shop for the use of plain-tiffs, the said plaintiffs to have the exclusive possession, use and con-trol of said lot, and all the improvements thereon, and to be erected thereon as aforesaid, for the rent and price aforesaid. Plaintiffs went into possession of said leased premises on said first day of July, 1879, and promptly paid the rental according to the agreement, and, al-though often requested so do, the defendants, not regarding their said promises and undertakings in this regard, but contriving to in-jure and wholly ruin plaintiffs, failed and refused to put and keep said premises in good tenantable condition, and to make said several impropements. Defendants did build the blacksmith shop upon said

lot, but immediately, without the consent of plaintiffs, rented it to other parties, and received rent therefrom.

Plaintiffs further say that, on the 1st of December, 1879, defendants rented the whole of said premises to J. C. Hess, and on 1st of January, 1880, defendants took possession of said premises, and ousted plaintiffs therefrom, under protest and against the wishes of plaintiffs, and plaintiffs then and there gave defendants notice that plaintiffs would hold defendants liable for all damages, both for the non-compliance with the contract of lease, and for the ouster and all resulting damages to the damage of plaintiffs, twenty-five hundred dollars, etc.

To this declaration defendants demurred on two grounds:

(1.) Misjoinder, because the declaration was founded in both contract and tort.

(2.) Because no cause of action was plainly, fully and distinctly set forth.  The demurrer was overruled.

It is unnecessary to detail the evidence, further than to state that plaintiffs' testimony indicated that the contract was made with D. Smith, and his real estate agent notified them subsequently that he had rented to another; but the warrant to dispossess them was made by Smith, as agent for his wife; that they filed a counter-affidavit, but subsequently yielded possession under protest.  As to the making of the contract and the items of damage set out in the declaration, the evidence was conflicting.

The jury found for the plainstiffs $1,000.00.  Defendants moved for a new trial, on the following among other grounds:

(1.) Because the court refused to sustain the demurrer to plaintiffs' declaration on the two grounds above stated.

(2.) Because the court admitted the following evidence of Reuben Hill over objection of defendants: "I took in from thirty to seventy-five dollars per day, and my profits were at least ten dollars per day, and were increasing daily, before water gave out. . . . Have made fifteen dollars per day profit on the bar. . . I was injured three thousand dollars by having no water and having to give up. . . . The water giving out injured my trade two-thirds or more."  [As to this ground, the court certified as

follows: " My recollection is, that the error complained of in second ground as to Hill's testimony as to three thousand. dollars was withdrawn from the consideration of jury, or regarded on all sides as out of the case, the witness having stated it voluntarily; as I know, if objection was distinctly made, I would not have permitted such testimony to remain in the case; but precisely how it transpired, my memory does not serve me."]

(3.) Because the court erred in remarking aloud and in the presence of the jury, while defendants' counsel was questioning the plaintiff, Hill, who was then a witness being subjected to cross-examination, " Colonel Thomson seems to be taking the census," said remark being calculated to mislead the jury. [As to this ground the court certified as follows: " The remark I made complained of as error in third ground of motion happened in this way: The witness, Hill, had been on the stand a long time; it was nearly or quite night. I had not before adjourned until next day, because I wanted to complete Hill's examination before doing so. I found from the course of cross-examination, in requiring witness to name every one of his customers upon whom he predicated a loss, of whom there were so many being named, I would have to adjourn before completing the examination; and I said, in mere pleasantry that, as Colonel Thomson seemed to be taking the census, I would have to adjourn without completing the examinition of witness, not supposing it would be considered in any light by counsel or jurors, which, if so, would deny to the court the poor privilege of a jest to relieve the dull monotony of a tedious case. The cross-examination was resumed next morning, and continued without abridgment until defendants' counsel was satisfied."]

(4.) Because the court overruled a motion of defendants' counsel to withdraw from the consideration of the jury, all evidence of damage to plaintiff's business from want of water. Said motion being made after the evidence

was all in, and upon two grounds: (1) That the declara-
tion contained no averment that authorized the introduc-
tion of such evidence ; (2) that the damages proved were
too remote, and the manner of proving them inadmissible.
[As to this ground, the court certified as follows: "In
making the ruling complained of in fourth ground, I did
not regard the evidence of the three thousand dollars' esti-
mate of injury, made by the witness, Hill, as embraced in
the evidence."]

(5.) Because the court charged as follows: "A point
has been raised as to whether the contract was joint or
several.   The defendants are sued jointly as the persons
making the contract; as they are sued jointly, there should
be, in order to separate them, a plea in abatement.   In the
absence of such a plea, if defendants have not established
to your satisfaction where the title is, then the action should
proceed for what it is worth as against both.   Titles to
real estate pass by writing, and to properly establish title,
a writing should be produced by the party claiming the
title against apparent ownership, and acts in accordance
therewith.   If this rule has not been complied with, the
action would proceed against both defendants."

(6.) Because the court charged as follows: "You will
look to see if there are breaches of the contract.   Plaintiffs
complain that it was broken in two ways:   First, that de-
fendants were to erect certain buildings, stalls, black-
smith shop, and supply plenty of water ; and that this was
not done.   Did defendants fail in any one or more of these?
Then there was a breach of the contract, and to the extent
of plaintiff's damage, they would be entitled to recover."

(7.) Because the court charged as follows: "Any evi-
dence of damages traceable solely to this breach of con-
tract, either from loss of business before by plaintiffs or
profits afterwards by parties occupying the premises, may
be considered by you, and made the basis of your calcula-
tion in finding damages, should you find any."

(8.) Because the court charged as follows: "If plaintiffs

were ejected, and in that act defendants made a second breach, in finding nominal damages, you can consider the oppressiveness of defendants' action in this second breach, if you believe there were two breaches, and there was oppressiveness in the second breach."

The motion was overruled, and defendants excepted.

CANDLER, THOMSON & CANDLER, for plaintiffs in error.

REUBEN ARNOLD; FRANK A. ARNOLD, for defendants.

JACKSON, Chief Justice.

The defendants in error sued the plaintiffs in error for damages flowing out of a contract for lease of certain premises, in not fixing the same in a tenantable condition for the purposes for which they were leased under the contract, and in ejecting the defendants in error therefrom wrongfully, before the lease expired. The trial resulted in a verdict for a thousand dollars, and plaintiffs in error, defendants below, excepted to the refusal of a new trial on the several grounds stated in the motion, and assign error here on the refusal of that motion on those grounds.

1. While the declaration is not as formally and lucidly drawn as it might have been, there was no error in overruling the motion to dismiss it.

In substance, it is an action on the case for damages consequent upon the breaking of the terms of the lease, and in effect sounds in tort. The contract is set out by way of indictment, and the breach of duty under the lease, first, in not fixing the property so as to be tenantable for the purpose for which it was leased, and which plaintiffs in error had agreed to do; and secondly, in turning out the defendants in error before the time had expired. There are not two counts in it, but one count with two main branches of damage for the wrong or tort in not performing the duty under the contract which the law imposed upon the plaintiffs in error. There is no misjoinder of

counts for tort and contract. This case is covered by the *City and Suburban Railroad Co. vs. Brauss*, 70 *Ga.*, 368. The declaration sufficiently sets out the complaint of the defendants in error.

2. The sweeping statement on the stand by Hill, one of the plaintiffs below, that he was damaged three thousand dollars, was inadmissible, 58 *Ga.*, 110 ; but before granting the rule *nisi* the court does not certify this ground of the motion. The motion for the new trial, the rule *nisi* thereon and qualifications thereof, are matters of record, and where the bill of exceptions and record differ in relation to matters of record properly, the record will prevail.

Nothing else seems objectionable in this ground of the motion. The witness had the right to swear as to his daily receipts and profits.

3. The counsel for defendants to the suit had drawn out from the witness, Hill, the plaintiff, the names of a large number of his customers, and the court remarked that he seemed to be taking a census, and he would adjourn the case to next day. Night was approaching, and the judge made the remark jestingly as a reason for adjourning. It is excepted to, because it may have misled the jury. How, is not set out in the motion. We think the remark wholly immaterial, and it could not reasonably mislead the jury or hurt the defendants. The point is wholly unlike that in 61 *Ga.*, 359.

4. It was legitimate to prove damage from want of water, which, according to plaintiffs' version of the contract of lease, defendants had agreed to supply, and failed in digging wells according to contract, when the purpose of the lease, a wagon and stock-yard, is considered. Failure to comply with the terms and damage therefrom, are enough to set out in the declaration, without specifying every item. So there was no error in refusing to rule out all evidence of damage from lack of water. The damage flowed directly from the wrong in not furnishing water as,

according to plaintiffs' version, defendants had agreed to do.

5. The two defendants, man and wife, were joined in the action. The husband had made the contract individually, and yet took out the warrant to dispossess as agent for his wife. They were properly joined as joint tort-feasors, unless a plea of misjoinder had been entered and established by legal proof. This, in substance, is the charge, and the defendants show in this record no hurt to either by it.

6. There was no error in charging the jury, "You will look to see if there are breaches of the contract. Plaintiffs complain that it was broken in two ways: First, that defendants were to erect certain buildings, stalls, blacksmith shop, and supply plenty of water; and that this was not done. Did defendants fail in any one or more of these? Then there was a breach of contract, and to the extent of plaintiffs' damage, they would be entitled to recover." This was the very gist of the action, outside of damage from the eviction, and we cannot see error in putting the issue before the jury right there, and in the language used by the judge in giving the law on that issue.

7. On the subject of damage consequent on unlawful and wrongful eviction prior to the expiration of the lease, the court charged: "Any evidence of damages traceable to this breach of contract, either from loss of business before by plaintiffs, or profits afterwards by parties occupying the premises, may be considered by you and made the basis of your calculation in finding damages, should you find any."

We think that this charge is error. What other parties in possession made afterwards, is no basis for recovery by plaintiffs. The successors of plaintiffs may have been more popular, and thus have had more customers. They may have managed better, and made more money. They may have been men of better habits, more prudent and more successful business men, more accustomed to this

sort of business, and in these and many other ways the business may have been more profitable with them than in the hands of plaintiffs. Therefore, to base plaintiffs' prospective profits on their success, would be far from a just rule by which to measure damages sustained by them by their eviction. True, evidence of future patronage, of the number of wagons, cattle, sheep, etc., received in the yard by the successors, would be admissible to show that the railroads permeating the North Georgia territory had not materially lessened the wagoning, and cattle and sheep-driving before their building and running, in rebuttal of proof to the contrary; but to make the profits of successors the measure of how much plaintiffs could have made if not evicted, and thus the measure of their damages, would not be in accordance with law or reason.

8. So, too, on the subject of eviction, the court charged: "If plaintiffs were ejected, and in that act defendants made a second breach, in finding nominal damages, you can consider the oppressiveness of defendants' action in this second breach, if you believe there were breaches, and there was oppressiveness in the second breach." We think that this charge, too, is erroneous, and was apt to mislead the jury. There is no evidence of oppression or oppressiveness in this record in the proceeding to dispossess the plaintiffs. It was simply the ordinary process legally authorized to eject a tenant holding over. A counter-affidavit was put in and bond given by plaintiffs; no harshness of any sort was resorted to; it was simply a test of the question, according to law, whether the plaintiffs were tenants holding over or not. The plaintiffs declined the contest, and thus that proceeding was ended by their relinquishing possession under protest, according to their own evidence. That did not deprive them, it is true, of recovering their legitimate damages flowing from the breach of contract when evicted, and by reason of the eviction, if they gave up under protest. Those damages were what they lost by being evicted, to be measured by what they could have cleared,

had they not been evicted, if they were not holding over as tenants; but they can recover nothing by way of punitive or exemplary damage for oppression, harsh treatment, or anything of that sort, for there is no evidence of it in this record. Therefore, it was error to make the charge, and it may have misled, and probably did mislead, the jury, and increase the damages.

The other grounds are in regard to the verdict being against certain charges of the court, the law and evidence, newly discovered evidence, etc., which, as the case is to be tried over, and to rule on them would not aid in the new investigation, and might have the effect of depriving the jury of a fair trial *de novo* on the facts, should we intimate our opinion thereon, we deem it unnecessary or improper to rule upon.

As the case is a close one, closely contested on the evidence, which is very conflicting, both as to the terms of the lease and its violation by the parties, and as to the damages, if the lease was violated by the defendants, we feel it our duty to reverse the judgment on the 7th and 8th grounds of the motion for a new trial, and to direct that the verdict be set aside and a new trial granted for error in the charge, as alleged in those two grounds.

Judgment reversed.