## WELLINGTON v. SPENCER et al.

No. 2751.  Opinion Filed May 20, 1913.

(132 Pac. 675.)

1.   **PLEADING—Separate Statement of Causes of Action.** It is not improper to join, in the same count in a petition, an allegation that the defendant took possession of certain personal property belonging to plaintiff and converted it to his own use, with an allegation that defendant entered a building where plaintiff was carrying on a hotel business, took possession of the building, closed same, and thereby destroyed plaintiff's business, where it is alleged that the goods alleged to have been converted were taken from the building at the time it was entered, and the entering of the building and the taking of the personal property are parts of the same transaction.

2.   **DAMAGES—Destruction of Established Business.** The loss of profits proximately resulting from the destruction of an established business constitute an element of damages recoverable for such destruction.

3. **ATTACHMENT—Wrongful Levy.** It is not a defense to an action for entering a building occupied by plaintiff as a hotel, ejecting him therefrom, destroying his business, and seizing and converting his goods, that the defendant was acting by virtue of a writ of attachment which he had sued out as plaintiff in an action against the plaintiff in this action, to recover a debt, where there were no grounds for the attachment and it was dissolved.

4. **SAME—Evidence—Unlawful Use of Building.** The plaintiff occupied a building belonging to the defendant. The rent was payable in advance. The plaintiff failed to pay at the beginning of the month, and six days later the defendant sued him for the rent of the current month, sued out a writ of attachment, and by virtue thereof took possession of the personal property in the building, and closed the building and ejected plaintiff therefrom. The attachment was dissolved. In an action brought against him by plaintiff to recover damages for the closing of his business and conversion of his chattels, defendant offered to testify that plaintiff was selling intoxicants in the building. It appeared that, if true, defendant had knowledge thereof before he demanded rent, but that he brought suit for the rent and closed the building without making complaint as to the unlawful use thereof, or demanding possession thereof. **Held,** that the evidence as to such use was properly excluded.

(Syllabus by Rosser, C.)

*Error from Superior Court, Pottawatomie County;*
*George C. Abernathy, Judge.*

Action by E. W. Spencer against J. H. Wellington and C. M. Arthur. Judgment for plaintiff, and defendant Wellington brings error. Affirmed.

*P. O. Cassidy,* for plaintiff in error.
*J. H. Wood, S. P. Freeling,* and *J. H. Miley,* for defendants in error.

Opinion by ROSSER, C. E. W. Spencer occupied a building belonging to J. H. Wellington and used it as a hotel. The rent on the building was payable in advance and was due June 20, 1908. Wellington called on Spencer to pay the rent, but he did not pay. Wellington brought suit against him in justice court for $60 and sued out an attachment. The constable, Arthur, acting under Wellington's direction, attached everything in the building, except some wearing apparel of Spencer and

his family, and posted notices on the doors of the various rooms in the building that the building and the contents were attached at the suit of Wellington. The officer set the trunks of Spencer and wife out of the house and locked the doors. Spencer sought other employment and made no effort to regain possession of the house. The case was tried before the justice in a few days and the attachment was discharged. Wellington appealed to the county court, but for some reason not clearly appearing in the record the appeal was dismissed. After a short time the attached property was removed from the hotel building and placed in storage, and Wellington rented the building to some one else. At the suggestion of Wellington or his attorney the holder of a mortgage on a portion of the attached property took possession of the portion mortgaged, without foreclosing, and about a year after the attachment was levied the balance of the property was returned to Spencer. He then brought this suit against Wellington and Arthur, the constable who made the levy. Plaintiff's amended petition alleged that the defendants took possession of the hotel business, building, furniture, and equipment and certain wearing apparel; that the value of the hotel business and good will was $1,500, and of the property taken and not returned something more than $900; that by reason of defendant's wrongful acts the hotel business was broken up; and that he was damaged in the sum of $2,430.33. Wellington filed a motion which stated that the loss of profits to the hotel business and the damages by reason of the taking of the property were separate causes of action, and which asked to have said causes of action set forth in separate counts. This motion was overruled, and the action of the court thereon is assigned as error.

The point is not well taken. There was only one wrongful act. The destruction of the business was only one item of damages occasioned by the act of Wellington. The fact that a different class of property was affected by the closing of the hotel from that affected by the taking of the furniture did not make a different cause of action any more than the taking of

each item of personal property constituted a separate cause of action. The whole matter was one transaction, and therefore it was proper to state it in one count. If the plaintiff had undertaken to make two counts of his petition, he would have been compelled to state the same facts in both counts. The only difference in them would have been that he would have alleged the extent of his damage with reference to the personal property in one count and to the leasehold interest as to the other. *Tootle v. Kent*, 12 Okla. 674, 73 Pac. 310.

In *Oliver v. Perkins*, 92 Mich. 304, 52 N. W. 609, it was held that a petition, which alleged that the defendants wrongfully and without notice or legal proceedings ejected plaintiff from his office and removed all his office furniture and placed it in the street, refused to permit and allow the plaintiff to enter his office, and prevented him from carrying on his business, and published to the public that the plaintiff had no right, title, or interest in certain machines or in the business of selling them, and notified all parties from whom the plaintiff had obtained orders for the machines that they should cancel their orders and send new orders to be placed with the defendants, and published to the commercial agencies and the public that the plaintiff was irresponsible, stated a single cause of action. *Bahr v. Boley*, 85 Hun, 448, 32 N. Y. Supp. 881, was an action for damages for trespass on lands, and the complaint, after alleging the trespass and conversion of property, alleged that "on said day, after forcibly assaulting and ejecting plaintiff, the defendant, maliciously and without cause, caused the plaintiff to be arrested and taken through the public streets of Brooklyn to a station house in charge of a policeman in uniform." It was held that the plaintiff could allege and prove all his injuries caused by the trespass, either to his person or to his personal property. The court said:

"There is no doubt that in an action for trespass on lands the plaintiff could allege and prove all his injuries caused by the trespass either to his person or to his personal property. In such case the cause of action would be the trespass, and the

injury to his person and personal property will not be an inde-
pendent cause of action, but aggravation of the damages. We
think that the allegation of the complaint quoted is to be con-
strued as alleging the continuation of a single trespass. In this
view there is but a single cause of action set forth in the com-
plaint."

See, also, *Brown v. Master,* 104 Ala. 451, 16 South. 443;
*Beldon v. Granniss,* 27 Conn. 511.

The next question presented is whether the closing of the
hotel building and consequent destruction of plaintiff's business
was an element of damage to which he was entitled. The deci-
sions upon this question are not uniform. A number of cases
hold that no recovery can be had for loss of profits. However,
not many late cases can be found supporting that proposition.
A number of cases hold that no recovery for loss of profits oc-
casioned by the destruction of business can be had unless the
act which occasioned the loss was malicious. *Kaufman v. Arm-
strong,* 74 Tex. 65, 11 S. W. 1048; *Bucki-Lumber Co. v. Mary-
land Fidelity Co.,* 109 Fed. 393, 48 C. C. A. 436; *Union Nat.
Bank v. Cross,* 100 Wis. 174, 75 N. W. 992; *Braundorf v. Fell-
ner,* 76 Wis. 1, 45 N. W. 97. But a large number of well-
considered cases hold that when the loss of profits is the proxi-
mate result of the unlawful act, and the amount is capable of
proof to a reasonable certainty, the earnings of a business may
be taken into consideration when assessing damages for the un-
lawful act. *Smith v. Eubanks,* 72 Ga. 280; *Stewart v. Lanier
House Co.,* 75 Ga. 582; *Chapman v. Kirby,* 49 Ill. 211; *Law-
rence v. Hagerman,* 56 Ill. 68, 8 Am. Rep. 674; *Dobbins v. Du-
quid,* 65 Ill. 464; *Terre Haute v. Hudnut,* 112 Ind. 542, 13 N.
E. 686; *Moore v. Schultz,* 31 Md. 418; *Lawson v. Price,* 45 Md.
123; *Evans v. Murphy,* 87 Md. 498, 40 Atl. 109; *Goebel v.
Hough,* 26 Minn. 252, 2 N. W. 163. See Sedgwick on Dam-
ages, sec. 173 *et seq.*

The reason that prospective profits cannot be considered in
estimating damages is that they are uncertain and not capable
of sufficiently definite proof to justify a verdict or decision as

to their amount. The law does require reasonable certainty, but not more than that. In personal injury cases, where there is permanent disability, the juries are always permitted to consider the plaintiff's earning capacity in connection with his probable life duration, and this, in the face of the fact that we are constantly taught that life is uncertain and that no one is justified in presuming that he will live any particular length of time. The jury is simply permitted to use the best basis possible for estimating the damages. Why should not the same rule apply in cases where a business had been broken up or interrupted? Of course, juries will not be permitted to merely speculate as to damages. Where the plaintiff has just made his arrangements to begin business, and he is prevented from beginning either by tort or a breach of contract, or where the injury is to a particular subject-matter, profits of which are uncertain, evidence as to expected profits must be excluded from the jury because of the uncertainty. There is as much reason to believe that there will be no profits as to believe that there will be profits, but no such argument can be made against proving a usual profit of an established business. In this case the plaintiff, according to his testimony, had an established business, and was earning a profit in the business, and had been doing that for a sufficient length of time that evidence as to prospective profits was not entirely speculative. Men who have been engaged in business calculate, with a reasonable certainty the income from their business, make their plans to live accordingly, and the value of such business is not such a matter of speculation as to exclude evidence from the jury.

In the case of *Allison v. Chandler,* 11 Mich. 542, the court, speaking by Christiancy, J., said:

"This business must be broken up by the ouster, unless the plaintiff could obtain another fit place for it; and if the only place he could obtain was less fitted and less valuable * * * for that purpose, then such business would be injured to the extent of this difference; and this would be the natural, direct, and immediate consequence of the injury. To confine the plaintiff to the difference between the rent paid and the fair rental

value of the premises to others, for the balance of the term, would be but a mockery of justice. To test this, suppose the plaintiff is actually *paying that full rental value,* and has established a business upon the premises, the clear gains or profits of which have been an average of one thousand dollars per year, and he is ousted from the premises and this business entirely broken up for the balance of the time; can he be · allowed to recover nothing but six cents damages for his loss? To ask such a question is to answer it."

In *Lambert v. Haskell,* 80 Cal. 611, 22 Pac. 327, the court said:

"It is objected that the respondent was allowed to recover damages for the profits which he would have made had he not been prevented by the injunction from carrying on his business. We think that this was proper. It must be true that where a party is wrongfully prevented by injunction from carrying on a profitable and established business he can recover damages therefor. And if the profits which he would have made are not to be allowed, what damages is he to recover? Would it be adequate compensation to reimburse him merely .for his expenditures, and for the losses which he might sustain from being prevented from fulfilling existing engagements, and the depreciation of his stock in trade? If this were true, there would be a very convenient way of getting rid of a business rival. A business might be destroyed by a preliminary injunction before the truth of the allegations upon which it was obtained could be inquired into. The best considered cases agree that, where an established business is wrongfully injured or destroyed, the owner of the business can recover the damages sustained thereby, and that upon this question evidence of the profits which he was actually making is admissible. *Terre Haute v. Hudnut,* 120 Ind. 550 *et seq.* [13 N. E. 686]; *Chapman v. Kirby,* 49 Ill. 219; *Simmons v. Brown,* 5 R. I. 299, 73 Am. Dec. 66; *Gibson v. Fisher,* 68 Iowa, 30 [25 N. W. 914]; *Goebel v. Hough,* 26 Minn. 256 [2 N. W. 163]; *Shafer v. Wilson,* 44 Md. 268."

In the case of *Chapman v. Kirby,* 49 Ill. 211, the court said:

"As to the estimate of losses sustained by the breaking up of his established business, there would seem to be no well-founded objection. We all know that in many, if not all, profes-

sions and callings, years of effort, skill, and toil are necessary to establish a profitable business, and that when established it is worth more than capital. Can it then be said that a party deprived of it has no remedy, and can recover nothing for its loss, when produced by another? It has long been well recognized law that, when deprived of such business by slander, compensation for its loss may be recovered in this form of action. And why not for its loss by this more direct means? And of what does this loss consist, but the profits that would have been made had the act not been performed by appellants? And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving the other party to show that by depression in trade, or other causes, they would have been less? Nor can we expect that in actions of this character, the precise extent of the damages can be shown by demonstration. But by this means they can be ascertained with a reasonable degree of certainty."

The question was decided by the Supreme Court of the territory in the case of *Tootle v. Kent*, 12 Okla. 674, 73 Pac. 310.

In the case of *Ft. Smith & Western R. Co. v. Williams*, 30 Okla. 726, 121 Pac. 275, 40 L. R. A. (N. S.) 494, the general doctrine with reference to proving expected profits as an element of damages was considered, and a large number of authorities cited and discussed. It was held in that case where a railroad company undertook to deliver a rotary swing, some times called a "merry-go-round," to be used at a picnic, knowing the purpose for which it was to be used, upon its failure to deliver same, it was liable for the profit that would have been made by the use of the swing during the progress of the picnic, and that opinion clearly points out that the reason evidence as to anticipated profits is excluded in many cases is because they are incapable of being proved with a reasonable degree of certainty.

Defendant assigns as error the instruction that the fact that plaintiff was indebted to the defendant and that an attachment writ was issued was no defense to the action. Defendant

asserts that this was error, but does not cite any cases or give a satisfactory reason for the assertion. The fact that a man owes another does not give the creditor the right to take his goods or shut up his place of business. The defendant was unsuccessful in the attachment suit. There is nothing in the record showing that any statutory grounds for attachment existed. A person who sues out an attachment and causes it to be levied cannot defend an action for the taking and converting of the property attached and the closing of the house containing the property, upon the ground that the acts were done by virtue of the writ unless the statutory grounds existed justifying the issuance of the writ. Where malice is charged and exemplary damages asked, the attachment proceedings might be material under restrictions not necessary to be defined here. But malice is not charged here, though the record .shows exceedingly oppressive conduct on the part of the defendant.

Finally, it is claimed that the court erred in excluding the testimony of the defendant himself to the effect that he knew that plaintiff sold intoxicating liquor in the hotel. The defendant had the right to eject the plaintiff from the building if he was selling intoxicants there. And, though the statute provides that the landlord may recover possession as in forcible entry and detainer, that does not mean that he must bring such a proceeding if he can obtain possession in any other peaceable way. But it does not mean that he can use force or fraud to obtain possession. In this case by the abuse of the attachment process defendant obtained possession by fraud which was equivalent to force. The evidence shows conclusively that the defendant made this defense as an afterthought. There is no evidence that he made any complaint to the plaintiff that he was using the premises for an illegal purpose. On the other hand, he demanded the rent, and the conclusion is irresistible that, if plaintiff had paid the rent, the defendant would have been willing for him to remain another month. If the plaintiff was engaged in an unlawful business, defendant was conniving at it. He did not make complaint before he got possession, but, on

the other hand, sued for the rent for another month. He did not give the unlawful use of the premises as a reason for taking possession. He used the attachment for that purpose. He is in exactly the same attitude as if he had taken possession by force. If he had taken possession by force, he would not be heard to say that he did so because plaintiff was selling liquor. He cannot take possession for one reason and hold it for another. His positions before and since taking possession are inconsistent.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.