## KEYS v. BORDER.

No. 17672. Opinion Filed June 5, 1928.
Rehearing Denied March 12, 1929.

250

Stevens & Cline, A. S. Wells, Lydick, Mc-Pherren & Jordan, and Kittie C. Sturdevant, for plaintiff in error.

A. M. Stewart and Warren K. Snyder, for defendant in error.

HERR, C. This action was commenced by Dr. G. F. Border in the district court of Greer county, subsequently, by change of venue, taken to Beckham county, against John C. Keys, the Mangum Electric Company, and others, to recover damages for injury to his business and profession. The trial resulted in a verdict and judgment in favor of plaintiff in the sum of $25,000, $10,-000 being for actual damage, and $15 000 exemplary damage. To reverse the judgment, defendant Keys appeals to this court. This is the second appeal. At a former trial plaintiff also prevailed. The judgment, however, was reversed by this court. Mangum Electric Co. v. Border, 101 Okla. 64, 222 Pac. 1002. The judgment was reversed be-cause of error of the court in refusing a certain requested instruction.

The pleadings are fully set forth in the prior opinion, and we deem it unnecessary to here reiterate the same. Defendant relies for reversal mainly upon instructions given and refused, and the reception of alleged incompetent evidence. In order to consider these assignments it will be necessary to give a brief synopsis of the evidence.

It appears that sometime in 1914, an election was called by the city of Mangum for the purpose of voting bonds, the proceeds of which were to be used in installing a municipal light plant. Plaintiff is a physician and surgeon, and was, at said time, mayor of the city of Mangum. Defendant Mangum Electric Company was then the owner of and operating an electric plant in said city. Defendant Keys was one of the principal stockholders therein, and J. W. Chambers, also made a defendant in this action, was the local manager of said electric company. The said electric company desired to defeat the bond issue, and to accomplish this purpose, it was deemed necessary to destroy the influence of plaintiff. To accomplish this purpose, it was planned to have him perform an abortion, and then induce him, by threats of prosecution, to withdraw his support to the bond issue.

It further appears that by aid of a Burns detective, and ex-preacher, and several women, a woman was procured who represented herself to be pregnant and consented to the operation. It further appears that Moman Pruiett, an attorney at Oklahoma City, through a man by the name of Perry, was advised of the conspiracy about to be formed against plaintiff, and immediately notified plaintiff thereof. Plaintiff, at the request of Mr. Pruiett, immediately came to Oklahoma City, and, after consultation, plaintiff authorized him to employ Mr. Perry to keep him, plaintiff, advised as to the plans of the conspirators. It appears also that Mr. Perry, at the solicitation of Mr. Pruiett, ostensibly entered into the scheme as a co-conspirator and kept Mr. Pruiett fully advised as to their plans, who in turn informed the plaintiff thereof.

Attempts were made by defendants to induce plaintiff to perform the operation either at Oklahoma City, Altus, or Hobart. Plaintiff, however, insisted that the woman be brought to Mangum, he agreeing there to perform the operation. The woman was finally brought to Mangum on or about July 24, 1914: was registered at a hotel, and a

room assigned her. The entire bunch of conspirators also appeared. A dictagraph was, by the Burns detective, installed in the woman's room, and plaintiff was again solicited to perform the operation. Plaintiff, having been advised as to the plans of the defendant, had several of his friends secreted about the hotel as witnesses in his behalf.

It is further disclosed by the testimony on behalf of defendant that the plaintiff pretended to be ready and willing to perform the operation, but was advised by the defendants that it appeared to them as though the whole matter had been tipped off, and that the operation would be postponed. The plaintiff then had the defendants arrested charging them with criminal conspiracy.

The theory of the defense is that the plaintiff, having through his agent Perry participated in and encouraged the conspiracy, and aided and acted in the execution and advertisement of each overt act committed by the defendants tending to injure him, he cannot by reason thereof maintain this action, and complaint is made to the action of the court in refusing defendant's requested instruction to this effect. The court, however, gave the following instruction, which we think fully and fairly submits to the jury defendant's theory of the case:

"If you find from the evidence that at the time or after the alleged conspiracy was planned, G. F. Border had information that C. P. Walker and Cy Williams were about to conspire with others to procure said Border to consent to commit an abortion, and after having such information, the said Border, having knowledge of the intention of said parties in the respect herein indicated, employed Walter T. P. Perry to aid and abet in the formation of such conspiracy and in its execution for the purpose of leading conspirators on to the place where the alleged conspirators and the said Perry intended to execute the same, and cause them to believe that he, the said Border, would participate therein with the intention and purpose on the part of said Border to have said parties arrested, and to publish to the public the frustration of the conspiracy and the acts of the alleged comspirators in pursuance of such unlawful conspiracy and to make use of such publication so brought about or invited by himself, then your verdict should be for the defendants."

This is practically the same instruction which this court, in its prior opinion, held should have been given. There was no error in refusing the requested instruction.

Complaint is made as to instruction No. 11, given by the court, which is as follows:

"You are instructed that if you find from the evidence that the plaintiff, G. F. Border, merely instigated or set on foot inquiries for the purpose of ascertaining the source of evil reports, in connection with the alleged conspiracy, and in order that they might be counteracted, or for any other proper purpose, and not for the purpose of predicating an action for damages in his own behalf, he is not estopped thereby from maintaining an action for damages in this case."

There is some evidence to the effect that the plaintiff aided in the execution of the alleged conspiracy for the purpose of predicating a damage suit thereon, but this is denied by the plaintiff, and he testified that at the time Perry was employed to act in his behalf, he had no idea of framing a damage suit, but merely employed him in order that he might be advised of the plans against him in order that he might be able to defend himself; to the end that the plans to injure and destroy him might be counteracted.

In the case of Richardson v. Gunby (Kan.) 127 Pac. 533, it is said:

"A person who instigates or procures a libelous communication to be published against himself, for the purpose of predicating a suit for damages upon it, cannot recover in such an action. But if he instigates or sets on foot inquiries for the purpose of ascertaining the source of evil reports, in order that they may be counteracted, or for any other proper purpose, and not for the purpose of predicating an action for damages in his own behalf, he is not estopped thereby from maintaining such an action."

Plaintiff was entitled to have his theory of the case submitted to the jury. Under the above authority, we hold there was no error in giving this instruction.

It is further argued by defendant that plaintiff discovered the scheme and plans of the conspirators prior to the commission of any overt act tending to injure him; that it was his duty to use every reasonable means to minimize the damages, and, having failed so to do, he cannot recover, and the court was requested to so charge the jury. The refusal to give this instruction is assigned as error. This phase of the case was fully covered by instruction No. 12. of the general charge, which is as follows:

"You are instructed that it is the duty of a person who discovers that he is about to suffer damages from the acts or contem-

plated acts of another to use reasonable diligence to reduce or minimize such damages as will naturally result from such wrongful acts, or contemplated acts, of such other person. And in this connection you are told that if damages, if any, resulting from the acts of the alleged conspirators herein in pursuance of said conspiracy, could have been lessened or mitigated by any reasonable means and diligence by said Border, and that he did not use such means and diligence in an effort to mitigate such damages, then it will be your duty to take such fact into consideration in assessing damages, if any you find, for the plaintiff in this case."

We think this instruction fairly submits to the jury this phase of the defense, and there was, therefore, no error in refusing the requested instruction.

It is next contended that the court erred in admitting evidence relative to the alleged injury to plaintiff's business, and erred in charging the jury that, in the event they found for the plaintiff, in assessing damages, they might take into consideration damages, if any, sustained by plaintiff to his business as a physician and surgeon. On this proposition, it is argued that such element of damages is too remote and speculative, and that anticipated profits cannot be recovered.

The evidence discloses that plaintiff had built up a well-established business at Mangum; that immediately prior to the acts complained of, his business amounted to approximately $80,000 a year. The expenses of the business for several years prior to the alleged injury were shown by the evidence, and it was further established that for some time after the commission of the alleged wrongful acts by the defendants the business barely paid expenses. The evidence also discloses that several physicians throughout the country, who, theretofore, habitually sent their patients to plaintiff's hospital for treatment, no longer patronized the institution thereafter. We think plaintiff was entitled to recover damages for injury to this well-established business. In 25 Cyc. 509, the following rule is announced:

"Where special damages by reason of injury to plaintiff in his business or profession are properly pleaded, any evidence competent to show a special loss of or diminution in the business or profession is admissible."

In 17 R. C. L. 437, it is said:

"There is no question but that damages may be recovered for the loss of business, or employment, or the reduction of the prof-

its from the same, when such injury results from the libel or slander by the defendant. For the purpose of showing the amount of damages sustained, the plaintiff is entitled to show the general nature and extent of his business as well as a general loss or diminution thereof after the injury."

In the case of Wellington v. Spencer, 37 Okla. 461, 132 Pac. 675, this court says:

"The loss of profits proximately resulting from the destruction of an established business constitute an element of damages recoverable for such destruction."

See, also, Tootle v. Kent, 12 Okla. 674, 73 Pac. 310.

The evidence complained of was properly admitted and there was no error in the charge given.

Special interrogatories were submitted to the jury with the general verdict. It is contended that the answers to these interrogatories are inconsistent with themselves, and inconsistent with the general verdict, and that for this reason the judgment should be reversed. It is only necessary to a decision in this case to set out two of these interrogatories and answers thereto.

"Special Interrogatory No. 1.

"What amount, if any, do you award the plaintiff for actual damages to his business and profession as physician and surgeon? A. $10,000."

"Special Interrogatory No. 2.

"What amount, if any, do you award the plaintiff for damage to his character, reputation and standing as a citizen and as a physician and surgeon? A. None."

It is argued that, inasmuch as the jury allowed the plaintiff nothing for injury to his character, reputation and standing as a physician and surgeon, there was no basis for allowing damages to his business and profession. We cannot agree with this contention. The interrogatories were no doubt somewhat confusing to the jury, and an allowance having been made the plaintiff in the sum of $10,000 for injury to his business as a physician and surgeon, the jury no doubt thought it would be duplicating the damage by making an additional allowance as damages for injury to his character, reputation and standing as a physician and surgeon.

There is no such inconsistency between the interrogatories themselves and the general verdict requiring a reversal of the judgment.

It is also urged that the damages awarded

are excessive, special complaint being made as to the allowance of exemplary damages. This was a matter for the determination of the jury, and, under all the circumstances, we cannot say that the damages awarded are so excessive as to indicate passion or prejudice on the part of the jury.

It is also contended by the defendant that the court erred in overruling his demurrer to the petition, and erred in overruling his motion for a directed verdict. These matters were decided adversely to the defendant on the prior appeal. Mangum Electric Co. v. Border, supra. It is there held that the petition stated a cause of action, and that the evidence was sufficient to take the case to the jury.

The jury found for the plaintiff. No prejudicial error is shown by the record. The defendant had a fair trial. The verdict was approved by the trial court, and in our opinion the verdict is a just and righteous verdict.

Judgment should be affirmed.

BENNETT, TEEHEE, JEFFREY, and DIFFENDAFFER, Commissioners, concur. HALL, Commissioner, dissents.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 1711; 14 R. C. L. p. 752; 3 R. C. L. Supp. p. 275; 4 R. C. L. Supp. p. 916; 5 R. C. L. Supp. p. 776; 6 R. C. L. Supp. p. 829; 7 R. C. L. Supp. p. 468. (2) 38 Cyc. p. 529. (3) 17 C. J. p. 796, §117. (4) 12 C. J. p. 646, §260. (5) 12 C. J. p. 639, §234.