**RAMSEY et al. v. UNITED STATES.**

No. 50010.

United States Court of Claims.

Dec. 4, 1951.

354

William Ritchie, Omaha, Neb., for the plaintiffs.

William A. Stern, II, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiffs in this action are the trustees in bankruptcy of the Sterling Manufacturing Company, a Nebraska corporation, hereinafter sometimes referred to as the "Company," which is in reorganization under Chapter X of the Bankruptcy Act.

The corporation on May 18, 1946, entered into two contracts with the War Department to supply metal caskets with shipping cases to the Quartermaster Corps. Each contract called for the production of 2,000 caskets with cases at a unit price of $121.-95, making a total contract price on both contracts of $487,800. In addition, each contract contained a price redetermination clause which provided that the prices fixed in the contract might be increased or decreased by the contracting officer at the delivery point, Quartermaster Depot, Jeffersonville, Indiana. This officer was required by the contract to "negotiate promptly in good faith" to determine the final price, but if the corporation and the contracting officer failed to agree as to the final price for the caskets, the right was reserved to the corporation under the disputes clause of the contract to appeal the decision of the contracting officer to the Army Board of Contract Appeals.

By September 27, 1947, Sterling Manufacturing Company had produced and delivered the 4,000 caskets with cases, all of which were accepted by the Quartermaster Depot at Jeffersonville, Indiana, on behalf of the War Department. At this time the corporation presented a claim under the price redetermination clause to the contracting officer for an upward revision of the contract price. The contracting officer made findings denying the corporation's request for an increase, which findings the corporation refused to accept on the grounds that they were arbitrary and contrary to the requirements of the contracts. As a result, the Company filed an appeal with the Army Board of Contract Appeals, now called the Armed Services Board of Contract Appeals. The Government contested in detail the items presented in the corporation's claims, with the result that a determination of the final price was not forthcoming from the Armed Services Board of Contract Appeals until February 21, 1950. The Board made findings which granted the corporation a price increase of $565,655.31, which represented more than a one hundred percent increase over the contract amounts. This sum was paid to the trustees of the corporation in installments during the period from March 30, 1950, to September 26, 1950.

While the appeal to the Board of Contract Appeals was pending, the Company, on April 6, 1948, was forced to file a petition in the United States District Court, District of Nebraska, Omaha Division, for a reorganization under Chapter X of the Bankruptcy Act of June 22, 1938, 52 Stat. 883, et seq., U.S.C.A. Title 11, § 501, et seq. William C. Ramsey and Charles E. Stenicka were appointed trustees of the corporation and have continued to serve in that capacity.

The trustees now seek, on behalf of the corporation, to recover damages for alleged breach of contract by the Government, on the ground that the contract contained an implied condition which required the Gov-

ernment to pay fully for the 4,000 caskets and cases within a reasonable time after their delivery and acceptance. Plaintiffs allege that a reasonable time for making final payment, including amounts due the corporation under the price redetermination clause, on caskets delivered and accepted by September 27, 1947, was January 2, 1948, whereas the Government did not make final payment until September 26, 1950. Plaintiffs allege that as natural and probable consequences of the contracting officer's arbitrary refusal in the first instance, to award an increase in the contract price, and due to the delay of the General Accounting Office in paying the corporation the amount of the award made by the Board of Contract Appeals, the corporation suffered damages in the following items and amounts, for which plaintiffs should be compensated:

| | |
|---|---|
| (a) Interest paid on general claims of creditors from January 2, 1948 | $72.33 |
| (b) Interest paid on bank loans from January 2, 1948 | 22,106.20 |
| (c) Interest paid on Trustee's certificate from April 6, 1948 | 141.00 |
| (d) Interest paid on delinquent Old Age Benefits and Withholding Tax payments from January 2, 1948 | 272.66 |
| (e) Interest paid on delinquent personal property taxes from January 2, 1948 | 136.00 |
| (f) Interest paid on War Assets contracts from January 2, 1948 | 1,277.76 |
| (g) Interest paid on Federal Insurance Contributions Act, Income Tax Withholding and Excise Taxes from January 2, 1948 | 5,239.80 |
| (h) Costs of Reorganization proceedings under Chapter X of Bankruptcy Act | 34,818.56 |
| (i) Expenses of trial before Armed Services Board of Contract Appeals | 48,156.24 |
| (j) Expenses of care, storage, and removal of Government machinery and equipment | 8,636.55 |
| (k) Cost of reactivating machinery | 2,500.00 |
| (l) Loss of development costs of truck refrigeration business | 103,654.60 |
| (m) Loss of profits from entire business operations because of shortage of capital | 301,690.91 |
| Total | 528,702.66 |

The case is before the court on the Government's motion for judgment on the pleadings, the contention being that, under the circumstances of this case, none of the items of damages asserted in plaintiffs' claim represents compensable damages. The Government asserts that, while in form plaintiffs' various allegations are for damages arising out of the arbitrary action of the contracting officer, in substance plaintiffs are seeking damages arising out of an alleged breach of a contract to pay money; that the only measure of damages for a breach of a contract to pay money at a stipulated time is recovery of the principal amount with interest from the date of the breach; and that interest, in the absence of a contract or statute authorizing its payment, is not recoverable on an unpaid claim against the United States. The Government also urges that, as the contract represented only a portion of the entire business, the anticipated profits of the entire business are not a proper element of damages for breach of the contract to pay money because the loss of such profits is not a reasonable and natural consequence of the failure to pay money when due.

At the outset, it should be made clear that as to items (a) through (g) listed above in plaintiffs' claim, the plaintiffs are not asking for interest as such on the $565,655.31 which was not promptly paid to the corporation by the Government, but rather that plaintiffs are asking as part of their damage claim, the amounts paid out by the corporation as interest on loans, overdue taxes, and the like. However, even with this distinction in mind, a study of the contract convinces us that the Government has correctly characterized the nature of these items in plaintiffs' claims. Under the contract the corporation agreed to produce caskets and shipping cases in return for the Government's promise to pay a specified amount of money for the caskets and cases, both parties further agreeing to arbitrate any claims for an increase in the contract price, in the manner provided in the disputes clause of the contract. The performance of the Government consisted of its obligation to pay the amount of money finally found to be due the corporation, and the breach of the contract which resulted in the alleged damage to the corporation was the failure of the Government to pay the amounts allegedly due the corporation within a reasonable time after September 27, 1947, when the caskets were delivered.

■ The law is well-settled that, as a general rule, special damages, beyond the amount recognized as legal interest, cannot be recovered for a breach of contract to pay money which results only in a delay in payment. Loudon v. Taxing District, 104 U.S. 771, 26 L.Ed. 923; Kendall v. Stokes, 3 How. 87, 44 U.S. 87, 11 L.Ed. 506, 833. The law implies an agreement to make good the loss arising from a default in payment of money at a specified time by requiring the payment of lawful interest. New Orleans Insurance Co. v. Piaggio, 16 Wall. 378, 386, 21 L.Ed. 358. Therefore, the only measure of damages which plaintiffs could recover for the delay would be legal interest on the principal amount withheld.

■ However, the common law rule that delay or default in payment of money gives rise to a right to recover interest has been held not to be applicable to the sovereign government on grounds of public convenience, unless the sovereign's consent to pay interest has been exhibited by an act of the Congress, or by a lawful contract of its executive officers. United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935; United States v. North Carolina, 136 U.S. 211, 216, 10 S.Ct. 920, 34 L.Ed. 336; United States ex rel. Angarica de la Rua v. Bayard, 127 U.S. 251, 8 S.Ct. 1156, 32 L.Ed. 159; Richmond, Fredericksburg & Potomac Railroad Co. v. United States, 95 Ct.Cl. 244; Hind v. United States, 41 F.2d 892, 70 Ct.Cl. 288, 293. Congress has specifically provided by an Act of June 25, 1948, ch. 646, sec. 1, 62 Stat. 978, U.S.C. Title 28 (Supp. IV), § 2516(a), that: "Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof."

■ A provision in a Government contract for the payment of interest must be affirmative, clear-cut, and unambiguous. United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521. The Supreme Court has held that although an award of interest on a claim against the United States would be just or equitable, this fact alone does not empower the Court of Claims to make such an award on the basis of what they think is a sound policy. The immunity of the United States from liability for interest on unpaid claims is not to be waived by such policy arguments. United States v. New York Rayon Importing Co., 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577. The payment of interest as such was neither expressly provided for by the corporation's contract with the War Department, nor by any Act of Congress. Plaintiffs attempt to avoid the effect of this by designating their claim as one for damages, consisting of interest on amounts paid out by the corporation to third persons. But, as this court pointed out in Moran Brothers Co. v. United States, 61 Ct.Cl. 73, 106, "Calling interest 'damages' or loss does not deprive it of being interest, and the statute forbids the allowance of interest."

While some of the items of damage in plaintiffs' petition may appear novel, they are not new to the courts. In Myerle v. United States, 33 Ct.Cl. 1, plaintiff's interstate contracted to do work for the Government on the monitor Monadnock. The beginning of the work was delayed by the Government, and after the work was under way, the Government caused further delays which totaled seven years. As a result of these delays the contractor was forced to borrow money to carry on the work. Plaintiff sought to recover the interest which he was compelled to pay on the loan as an added expense, but this claim was denied, the court stating, 33 Ct.Cl. at page 25: "As to the interest on the borrowed money: The delay forced the contractor to borrow money to carry on his contract; for this he was forced to pay interest, an extra expense. The recovery of this sum in this court is forbidden by statute: whether it be claimed in the guise of a damage caused by delay, or in some other form, it remains in fact a claim for interest and such a claim we are prohibited from allowing. (Rev.Stat. § 1091.) The distinction by plaintiff sought to be made, is one of terms only, not of substance. If plaintiff had used his own money and so lost the interest which it might have earned

for him, the claim would have been as meritorious, but would not have differed in principle from that now made." The same may be said of the items (a) through (g) in plaintiffs' claim, and while they may be meritorious, in principle we cannot properly allow them under the terms of the contract in suit.

▮ Plaintiffs allege that the Government's failure to pay the money promptly was the immediate cause of the corporation's financial difficulties which resulted in a reorganization under the Bankruptcy Act. In actions for breach of contract the damages are ordinarily limited to the natural and probable consequences of the breach complained of, and the damages remotely or consequently resulting from the breach are not allowed. That the nonpayment of the contract price of the two contracts would put the corporation on the brink of bankruptcy could not have been reasonably foreseen by the Government. "For a damage to be direct there must appear no intervening incident * * *; the cause must produce the effect inevitably and naturally, not possibly nor even probably." Myerle v. United States, supra, 33 Ct.Cl. at page 27. The nonpayment by the Government of the contract price does not naturally and inevitably produce bankruptcy. Even if the Government had paid the corporation promptly, there is no assurance that the funds would have diverted financial difficulties. Accordingly, we conclude that plaintiffs' claim for reorganization expenses should not be allowed.

▮ The loss of the developmental costs of the truck refrigeration business, and the costs of reactivating machinery in the Sterling Company's plant are, like the cost of the reorganization, too speculative and too remote to be a compensable damage. These losses were accidental indirect results of the Government's breach in not making payment promptly, and not a direct foreseeable result of the nonpayment.

▮ The expenses of the appeal to the Armed Services Board of Contract Appeals may not be recovered by plaintiffs as an additional item of damages. These expenses must fall upon the corporation whose rights were recognized and safeguarded by the existence of this body. In Kendall v. Stokes, supra, the Postmaster General withheld money justly due and owing to plaintiff, causing plaintiff to suffer greatly in its business and credit. Plaintiff was forced to bring suit to recover the amount due him, and sought to recover as damages the heavy expenses and attorneys' fees incurred in protecting his rights against the Postmaster General. The Supreme Court denied recovery of these expenses on the grounds that interest was the only recognized measure of damages for nonpayment of money, and interest could not be recovered from the sovereign, there being neither an Act of Congress nor a contract authorizing its payment.

▮ The profits lost from the corporation's over-all business activities, because of its shortage of capital allegedly occasioned by the Government's failure to pay the contract amounts when due, may not be recovered either. It is important to bear in mind that the corporation's claim is not for the anticipated profits of the contracts in question, but is a claim for the anticipated profits of its entire business enterprise. The lost profits of these collateral undertakings, which the corporation was unable to carry out, are too remote to be classified as a natural result of the Government's delay in payment.[1] The statement of this court in Myerle v. United States, supra, 33 Ct.Cl. at page 26, fully disposes of this claim: " * * * But we think there is

---

1. Plaintiffs cite cases which hold that where as a result of a breach of a contract, which contract involves only a portion of a business, an established business is wrongfully injured or destroyed, the owner of the business can recover the damages occasioned by the breach including prospective profits of the entire business if such profits can be established with reasonable certainty. Wellington v. Spencer, 37 Okl. 461, 132 P. 675, 677, 46 L.R.A.,N.S., 469, and cases cited therein. This view has been followed in numerous State courts, but we are not inclined to follow this rule in the circumstances and under the terms of the contract involved in this case.

a distinction by which all questions of this sort can be easily tested. If the profits are such as would have accrued and grown out of the contract itself, as the direct and immediate results of its fulfillment, then they would form a just and proper item of damages, to be recovered against the delinquent party upon a breach of the agreement. These are part and parcel of the contract itself, and must have been in the contemplation of the parties when the agreement was entered into. But if they are such as would have been realized by the party from other independent and collateral undertakings, although entered into in consequence and on the faith of the principal contract, then they are too uncertain and remote to be taken into consideration as a part of the damages occasioned by the breach of the contract in suit."

 The foregoing disposes of all the plaintiffs' claims with the exception of paragraph 8(j) whereunder reimbursement is sought for costs expended in storing, maintaining, and removing certain machinery purchased by the corporation during the performance of the two contracts, and finally determined in the price renegotiation proceedings to belong to the Government. Plaintiffs argue that the refusal of the contracting officer to pass on the question of ownership of said property within a reasonable time and to allow compensation therefor to the corporation, was arbitrary and capricious, and compelled the outlay now sought to be recovered. This claim is unsupported by the allegations of the petition, as there are no facts pleaded to substantiate the contention that the contracting officer acted in an arbitrary manner. Also, the contracts called only for the manufacture of the caskets, and contained no provision concerning the determination of the ownership of this equipment. Plaintiffs do not allege the existence of a separate contract providing for the determination of this question. This equipment was the sole property of the corporation until such time as the Armed Services Board of Contract Appeals determined that the Government should reimburse the corporation for its purchase, and consequently no duty arose on the part of the Government to re-imburse the corporation for the expenditures incurred in protecting the corporation's own property.

For the above stated reasons, the Government's motion for judgment on the pleadings is granted.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, JJ., concur.