**S. W. MARSHALL, Jr.**
v.
**UNITED STATES.**
No. 589–53.

United States Court of Claims.
July 16, 1958.

S. W. Marshall, Jr., pro se.

David Orlikoff, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

JONES, Chief Judge.

This is a suit for damages for alleged breaches of contract and for delays in payment which plaintiff asserts occurred during the performance and completion of the contract in question.

On February 4, 1947, the plaintiff signed a contract with the Bureau of Ships of the Department of the Navy, which was approved by the Navy Department on February 20, 1947. It was a cost-plus-a-fixed-fee instrument by the terms of which plaintiff was to make investigations, studies, and analyses of

pilotless aircraft guidance and control systems, to complete such work before June 30, 1947, and to make reports thereon. The pertinent provisions of the contract are set out in finding 2.

By the terms of the original contract the maximum amount to be expended, including the fixed fee, was limited to the sum of $149,205.68. It was also provided that no payments in excess of this amount should be made unless the maximum amount to be expended was increased in writing by the contracting officer.

The nature of the allowable costs is set out specifically under Section A of the schedule annexed to the contract, which section is stated in full in finding 2.

Section 4(a) of the contract, also set out in finding 2, provides the method of approval of certain items of expenditure, and also provides for prior approval by the contracting officer as a condition to reimbursement for certain specified items.

The contract was officially transferred to the Bureau of Aeronautics in May 1947. After such transfer there were from time to time nine amendments to the contract, which are set out in finding 3. A number of these amendments increased the maximum expenditure permitted under the contract. They also, to some extent, changed the scope of the contract.

The time for performance was extended to October 31, 1947, but plaintiff completed the technical work and delivered the reports required by the contract on September 30, 1947, and they were accepted by the Government about December 19, 1947.

In addition to the amount paid by the Navy, plaintiff claimed that various amounts were due him under the contract. A number of these claims were rejected by the contracting officer. Plaintiff made ten appeals to the Navy Contract Appeals Panel of the Armed Services Board of Contract Appeals, which will be referred to herein as the Board.

Five of such appeals are involved in this action. Including the sums paid the plaintiff pursuant to the decisions in five of the appealed cases, plaintiff has been paid a total of $317,325.80.

Plaintiff asserts that additional sums are due him under the contract in the amount of $38,258.44. The items are shown in finding 5.

Plaintiff also seeks recovery of $150,-000 as unliquidated damages allegedly resulting from defendant's failure to pay invoices submitted by plaintiff within the 30-day period stipulated in Section 3(c) of the contract.

This is largely a factual case. Nearly 800 pages of testimony were taken before the trial commissioner and, in addition, numerous exhibits were filed as evidence. The analyses which the commissioner has made of the five appeals and the problems involved therein are clear, detailed, and correct. They are set out in full in finding 7 et seq. With very minor changes, we have approved the findings of the trial commissioner and we will not repeat the details of these findings.

It will be noted that the Board went into the subject matter thoroughly and made certain allowances to plaintiff in addition to those which had been approved by the contracting officer.

Plaintiff alleges that the action of the Board was arbitrary, capricious, and not supported by the evidence, but a careful review of the evidence shows that the Board was meticulous and careful in analyzing the evidence and that it increased allowable costs when such action was justified.

One of plaintiff's claims is for precontract expenses allegedly incurred during the three months immediately preceding the contract date. Until Amendment No. 4 was adopted, shortly before the date the contract ended, it contained no provision for the payment of precontract expenses. By that amendment plaintiff was allowed reimbursement for costs expended in anticipation of the contract, provided such costs were of the kind that

would have been paid under the terms of the contract if they had been incurred during its existence. Under this amendment the Navy cost inspector approved a total of $7,398.56 out of the claim of $15,266.83. On appeal the Board outlined certain principles to be followed in recomputing the precontract costs but did not fix the amount thereof. Thereafter, the Navy recomputed these costs and paid plaintiff the total due him under the Board's decision except the sum of $1,450.52, which we have found to be the additional amount due plaintiff as precontract expenses.

■ Plaintiff also seeks recovery of $4,630 as personal expenses spent on the items shown in finding 16. These items are claimed in addition to the $10 per day subsistence paid to the plaintiff. They involved theater tickets, lunches, magazines, and conference meals above the regular per diem allowance. The major part of the item of nearly $4,000 consisted of expenditures for luncheons and dinners for the plaintiff and his employees and consultants during the year 1947.

The Board held that the contract contained no express or implied provision for reimbursement of the cost of the conference meals as a direct cost; that they were not shown to have been reasonable and necessary to the performance of the contract, and that, at any rate, such expenditures were normally regarded as administrative expenses for which plaintiff had been reimbursed through payments made pursuant to the negotiated 55 percent overhead rate provided for in the contract. We agree.

■ Plaintiff also claims $700 as a fee which he paid to a certified public accountant. The Navy paid plaintiff for the fees he paid to outside accountants for services they rendered during the performance of the contract and for some time thereafter. The $700 additional now sought by plaintiff covers a fee for accounting services which were rendered nearly a year after the contract ended and for the purpose of enabling plaintiff

to prosecute his appeals on claims which had been denied by the Navy. We agree with the Board that there is no legal basis for the recovery of this accounting fee.

As additional job costs, plaintiff claims the sum of $20,438.71. Payment of these additional costs was first requested from the Navy in January 1948, several months after the contract had ended, but they were not itemized until September 8, 1948, when plaintiff submitted a final invoice. After denial of the claim by the Navy, the Board concluded that the additional job costs requested by plaintiff were either direct costs of the kind which were not allowable under the terms of the contract, or were indirect costs which had already been paid plaintiff in a settlement covering his overhead costs. The evidence, which we have set out in our findings, fully supports this determination.

Under Section A(a) (9) plaintiff claims $5,360.47 in addition to the sum of $13,501.23 which he has been paid by the Navy for expenses incurred in the operation of his privately owned aircraft. In the appeal on this claim, the Board remanded the case to the Navy with instructions to recompute the amount due plaintiff in accordance with the principles stated in its decision. As a result, additional payments were made by the Navy, and we have determined that this claim has been satisfied in full except for the sum of $162.30.

In addition to the above claims, the plaintiff seeks recovery of general damages in the sum of $150,000 on the ground that defendant breached the contract by delaying the payment of plaintiff's monthly invoices beyond the 30-day period specified in the contract, and by excepting to numerous items included in plaintiff's bills. As set out in detail in findings 46, 47, 48, and 49, the payments were to be made on monthly invoices.

■ There is no doubt that many of the payments were delayed beyond the period of 30 days. However, both the contracting officer and the Board found

that frequently the plaintiff failed to submit the essential statements and proof of the expenditures, and that he submitted a number of items which could not be allowed, which tended to delay payment; and also that plaintiff in many instances made the expenditures without getting approval in advance, as provided by the contract. The plaintiff was allowed a number of these items even though under the strict terms of the contract they would not have been paid. At the same time, since the expenses had been actually incurred, the Board in many instances permitted the payment when proper proof was made.

These delays were to some degree attributable to both parties: to the plaintiff because of his failure to secure advance approval of certain listed expenditures for which such procedure was required, for failing to authenticate fully the expenditures at the time of the submission of the invoices, and for including some items not reimbursable under the contract. On the other hand, the defendant in some instances unnecessarily delayed the payments. There is no way to apportion the degree of blame which should be attributed to either party, and in these circumstances recovery cannot be allowed. Hargrave v. United States, 1955, 130 F.Supp. 598, 132 Ct.Cl. 73.

It has been repeatedly held that, except under special circumstances, recovery for delay in payment of the amount due under a contract is limited to an allowance for interest.

It is also well established that interest on borrowed money is not recoverable in suits against the Government unless it is called for in the contract itself or in the governing statute. Neither of these conditions is found here. Tillson v. United States, 1879, 100 U.S. 43, 25 L.Ed. 543; Ramsey v. United States, 1951, 101 F.Supp. 353, 121 Ct.Cl. 426.

As of February 11, 1948, the plaintiff had invoiced the Navy for a total of $352,131.38, although at that time the contract maximum was $270,756.68.

However, after auditing plaintiff's books to determine whether or not the additional amounts were allowable expenses, plaintiff was paid an additional amount of $11,648.18, bringing the total payment to $268,049.11. On June 11 and 22, 1948, the maximum amount of the contract was increased to $350,000. After further auditing, an additional payment of $13,611.23 was made to the plaintiff. As a result of appeals to the Board on disputed accounts, plaintiff received the four payments detailed in finding 51.

On June 29, 1949, the parties negotiated a written settlement by which plaintiff received $26,500 on his claim for postcontract expenses. Plaintiff thus received a total of $317,325.80.

Plaintiff earnestly asserts that his report was an added expense. However, it will be found by examining the contract that plaintiff was required to make a final report. In fact, it was the final objective of the contract. Insofar as the expenses of the preparation of this report are concerned, such items as were shown by the evidence to have been expended were allowed and payment was made therefor. As already stated, both precontract and postcontract expenses were paid to the extent that these were justifiable.

Plaintiff bases his claims for recovery on the ground that the actions by the Board were arbitrary and capricious. However, in studying the record as a whole, we find that the Board was not only considerate, but was in some respects liberal in allowing certain items of cost that could not be or were not clearly proved. At any rate, the Board thoroughly considered every item claimed and we find no basis for holding that actions by the Board were arbitrary, capricious, or not supported by substantial evidence.

There is no doubt that this was an unfortunate experience for the plaintiff. As of April 30, 1946, plaintiff had about $45,000 in cash in banks and owned 2,000 shares of stock which he had ac-

quired at a cost of more than $70,000. His organization had offices in several cities. Sometime in July 1946 or prior thereto, plaintiff pledged 2,000 shares of stock to a bank as collateral security for money loaned to him for financing operations under the contract. In June 1948 the bank notified plaintiff that it had sold the stock for the sum of $50,169.37 and applied the proceeds of the sale to his outstanding indebtedness. About May 1948 plaintiff's financial condition was such that he was compelled to close his offices, with the exception of the Dallas office.

The contract in question did not require plaintiff to devote his full time to the contract work, and only about 55 percent of the time of his regularly employed personnel was spent on the Navy contract. Plaintiff had planned to secure a considerable amount of outside work while the contract was being performed, but it developed that the expenses he incurred in endeavoring to secure outside work far exceeded the income from that source. In fact, plaintiff wrote the Secretary of the Navy in May 1948 that his expenses for other than Navy work amounted to $30,000; that the income from outside sources amounted to only a little more than $4,000, and that his loss on noncontract work during that period was $25,000.

Apparently plaintiff was somewhat careless in not securing prior approval for certain types of expenditures, where such prior action was required. He spent some money unnecessarily on entertainment and was not sufficiently careful in establishing the monthly items of expenditure. Nevertheless, he was apparently a capable man in his field, rendered satisfactory work to the Navy, and was entitled to receive the amounts which he has been paid.

Whether our judgment on the many items considered by the Board would be exactly the same is a question which is not before us. After a review of the record, we are satisfied that the Board carefully and thoroughly considered each claim and that its decisions are fully supported by the evidence before us. We find nothing in the record to justify an affirmative determination of arbitrary or capricious action on the part of the Board.

Plaintiff has not shown by a preponderance of the evidence that the damages sustained by the loss of his stock and the liquidation of his four offices were the direct and proximate results of the defendant's breach of contract. His engineers and other personnel employed in his five offices had almost one-half of their working time available for the solicitation and handling of non-Navy business. There is no evidence in the record as to what outside business plaintiff could or would have obtained, or the profits he would have earned therefrom had there been no delay by the defendant in reimbursing plaintiff for the costs which he incurred under the contract.

On the basis of the findings plaintiff is entitled to recover the following:

| | |
|---|---:|
| 1 percent reserve withheld by defendant | $3,500.00 |
| Balance of precontract costs | 1,450.52 |
| Balance of private aircraft expense | 162.30 |
| Total | 5,112.82 |

———◆———

Plaintiff will be given judgment in the sum of $5,112.82.

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.