This action for breach of contract is before the court on defendant’s motion for summary judgment. Without oral argument, and on the basis of the submissions of the parties, we grant the motion and dismiss plaintiffs petition.
H-1
Plaintiff is, and has for some years, engaged in the manufacture and sale of electrical generator equipment. On March 14, 1966, the United States Marine Corps, Department of the Navy, awarded to plaintiff contract NOm-73511, a fixed-price contract for the manufacture and delivery of production quantities of 30 kw generator sets and related items. The contract price, as amended by various modifications, was $1,414,841. On September 8, 1969, pursuant to the Government-furnished property clause and the changes clause of the contract, plaintiff submitted a claim to the Government’s contracting officer for an equitable adjustment of $950,727 in the stated fixed price. The gravamen of the claim was that performance of the contract had been made more difficult and costly by defective or inappropriate Government-furnished property. The claim was later increased to $1,034,326.[1]
During 1969 and 1970, the parties engaged in numerous discussions with a view toward a negotiated settlement of plaintiffs claim. Mr, Dan Elmore, who was at the time a Marine Corps contracting officer, was the principal negotiator for the Government. Plaintiffs principal negotiator was Mr. Daniel Ross, a lawyer in private practice. On December 14, 1970, the Government, acting through Elmore, and *524 plaintiff reached an oral agreement to settle the entire claim for $623,500. The agreement was based on and included a promise by the Government to make prompt, expeditious payment of the settlement amount to plaintiff.[2] According to plaintiffs petition in this action,
[t]he promise by the government to make prompt payment was a highly significant factor in [plaintiffs] decision to settle its $1,034,326 claim for $623,500, and the promise actively induced [plaintiff] to agree to the reduced amount and relinquish the balance of its claim. The importance to [plaintiff] of prompt payment was that it was experiencing severe financial difficulties as a result of having its operating capital invested in the government contract work [which was the subject of its claim]. This fact was made known to the contracting officer during negotiations and regularly thereafter.
Elmore (the Government’s contracting officer) presented the settlement agreement, for post-negotiation clearance, to Mr. W. H. Underwood, who was director of procurement for the Marine Corps. In early January 1971, Underwood approved the agreement. At the time, Underwood considered it "a good deal.”
After approving the agreement, Underwood forwarded a request for settlement funds to the Navy Department. By March 3, 1971, funds for the settlement had been received by Elmore. On that date, Elmore informed Ross that a written supplemental agreement embodying the settlement would be ready for signature on March 5,1971.
This written supplemental agreement was never executed.
On 5 March 1971, before Mr. Ross and Mr. Brownell [plaintiffs president] arrived at Marine Corps Headquarters [to sign this agreement], events occurred that thwarted the actual execution of the Supplemental Agreement. Mr. Underwood received a call from the Deputy Quartermaster General of the Marine Corps. He was informed of certain information that the Marine Corps had been provided by the staff investigators of a House of Representatives Armed Services Subcommittee. It was allega *525 tions the staff investigators had developed and provided to the Marine Corps in connection with, among others, Mr. Elmore and Mr. Neuman [who was at the time assistant counsel to the Commandant of the Marine Corps and who had been involved in the negotiation of the settlement of plaintiffs claim], * * *.* * *
* * * * *
When Mr. Underwood received the information he became concerned about the integrity of the negotiation that he had approved in connection with the claim. He went down to Mr. Elmore’s office and directed that a settlement agreement not be executed. * * *[3]
At that point, Elmore became aware of a Navy procurement directive which appeared to require that the settlement, because it involved an amount over $600,000, be submitted to the Chief of Naval Material (CNM) for review and approval. Elmore apprised Underwood of the existence of this naval procurement directive. Thereafter, plaintiff was informed that the written supplemental agreement would not be executed on March 5, 1971, because the settlement had to be reviewed by CNM.
The settlement was then submitted by the Marine Corps to CNM for review and clearance. On April 20, 1971, CNM returned the clearance, disapproved, with a request for further information. No additional information was ever submitted to CNM by the Marine Corps.
In April 1971, the Marine Corps advised plaintiff that new personnel would have to review plaintiffs claim. Thereafter, the Marine Corps requested plaintiff to resubmit its claim. Without relinquishing its rights to the settlement agreement, plaintiff agreed to make a revised *526 submission of its claim. "On 10 September 1971 * * * [plaintiff] resubmitted its claim in the amount of $1,062,728, without prejudice to its position that the $623,500 was a final and binding settlement agreement.”[4]
On February 4, 1972, plaintiff requested a contracting officer’s final decision in writing. On February 9, 1972, a successor contracting officer issued a final decision which denied plaintiffs claim in its entirety. Plaintiff filed a timely appeal to the Armed Services Board of Contract Appeals ( asbca ).
The asbca held a hearing on the appeal and, at plaintiffs request, the issue was confined to the question:[5]
"Was there a binding and enforceable [oral settlement] agreement between the appellant and the Marine Corps Contracting Officer [Elmore] to pay the appellant $623,500 as a result of defective [Government-furnished equipment] * * *?”
On March 18, 1974, the asbca held that the oral settlement agreement was binding and enforceable between plaintiff and the Government. It therefore sustained plaintiffs appeal in the amount of $623,500 and otherwise denied the appeal.
On April 5, 1974, the Government issued a written modification to contract NOm-73511 whereby it paid plaintiff the sum of $623,500 and whereby plaintiff agreed as follows: * * * In consideration of such increase in contract price, the Contractor hereby waives all right, title and interest, if any, to any claims against Government arising under Contract NOm-73511, including, but not limited to, claims in regard to the Government-Furnished governor and the hump test.
On November 6,1979, plaintiff commenced this action. In its petition, it sets forth two counts for relief. Count I alleges that the Government breached the "(i) prompt payment requirement of the December 14,1970, settlement agreement and/or * * * (ii) its obligations under the Disputes Clause of Contract NOm 73511 to render a prompt, equitable, and impartial decision on Contractor’s *527 claim.” Count I asserts that plaintiff is entitled to recover damages for the following injuries which it allegedly suffered as a consequence of this breach:
* * * severe disruption to its business operations; having its operations shut down by the Internal Revenue Service for nonpayment of taxes; being unable to meet production schedules; having its credit standing destroyed so that suppliers required that sales to Contractor be on a prepaid or cash basis; having to borrow from finance companies at great additional cost to cover the deficit in its working capital caused by the government action; having the mortgage foreclosed on its principal facility; having its stock delisted from trading; having to expend substantial sums for attorneys’ fees and employees’ salaries to satisfy government requirements for submissions and to prosecute an appeal from the contracting officer; losing, because of inadequate working capital, other profitable contracts on which it was low bidder; and losing customers as a result of its financial position and unfavorable trade reports.
Count II of plaintiffs petition alleges, alternatively, that "the government has, by its wrongful actions, been unjustly enriched.” According to Count II, such unjust enrichment includes, inter alia, (i) property the value of which is the difference between the amount of the oral settlement and the amount of plaintiffs original administrative claim, (ii) use of this property for the period December 14, 1970, to date, and (iii) interest on the amount of the settlement agreement from March 5, 1971, to date of actual payment of this amount, April 15, 1974. Count II asserts that plaintiff is entitled to "monetary restitution * * * in such amount as the government has been unjustly enriched as aforesaid.”
II.
At the outset, we note defendant’s argument that the release which plaintiff executed on April 5, 1974, bars "as a matter of law” counts I and II of this action. Plaintiffs rejoinder to this argument is that the release applies only to "claims against Government arising under Contract NOm-73511” (emphasis supplied) and that counts I and II are breach of contract claims, rather than claims arising *528 under the contract. Because we are able to grant defendant’s motion for summary judgment on other of the grounds which it has advanced, we do not reach this issue.[6]
We address first count I of the petition. Count I specifies and seeks recovery of the damages which plaintiff alleges to have suffered as a result of defendant’s breach of the prompt payment provision of the oral settlement agreement "and/or” of defendant’s obligations under the disputes clause of contract NOm-73511. Defendant argues that count I fails to state a claim upon which relief can be granted. We agree. None of the items of damage specified in the count are recoverable.
A number of these items represent, in effect, interest on the amount of the oral settlement agreement from the time payment of this amount was due to the time payment was actually made.[7] Defendant argues that recovery of such interest is barred by 28 U.S.C. § 2516 (1976) and a long line of cases dealing with this statute, e.g., Coley Properties Corp. v. United States, 219 Ct. Cl. 227, 593 F.2d 380 (1979); Framlau Corp. v. United States, 215 Ct. Cl. 185, 568 F.2d 687 (1977); First National City Bank v. United States, 212 Ct. Cl. 357, 548 F.2d 928 (1977). Section 2516 provides in pertinent part:
(a) Interest on a claim against the United States shall be allowed in a judgment of the Court of Claims only under a contract or Act of Congress expressly providing for payment thereof.
The issue is, then, whether the oral settlement agreement "expressly [provides] for payment” of interest.
Plaintiff argues that the prompt payment provision of this agreement "is the same thing as 'expressly providing for payment’ of interest pursuant to 28 U.S.C. § 2516(a).” Plaintiff, however, cites no case law in support of this argument. The argument is untenable. It boils down to the *529 contention that the prompt payment provision necessarily implies payment of interest. As section 2516(a) precludes recovery of interest unless there is an express provision for the payment thereof, the just stated contention does not avail plaintiff. Under section 2516(a), "[a] provision in a Government contract for the payment of interest must be affirmative, clear-cut, and unambiguous.” Ramsey v. United States, 121 Ct. Cl. 426, 432, 101 F. Supp. 353, 356 (1951), cert. denied, 343 U.S. 977 (1952). Hence, for purposes of this section, a prompt payment provision is not equivalent to a provision "expressly providing for payment” of interest. See generally United States v. Mescalero Apache Tribe, 207 Ct. Cl. 369, 518 F.2d 1309 (1975), cert. denied, 425 U.S. 911 (1976).
Conceding that the oral settlement agreement does not expressly mention interest, plaintiff attempts to circumnavigate the bar of section 2516(a) by arguing: "In this case, the property of plaintiff (its settlement funds) was wrongfully appropriated in bad faith and without color of right by the government, and plaintiff is entitled to just compensation, including interest, for this taking.” This type of argument is not novel in suits on government contracts; nor is its steadfast repudiation by the courts. Acme Process Equipment Co. v. United States, 171 Ct. Cl. 324, 370, 347 F.2d 509, 537 (1965), rev’d on other grounds, 385 U.S. 138 (1966). Even assuming arguendo that a taking occurs when the Government refuses in bad faith to honor a prompt payment provision in a settlement agreement, plaintiffs predication of its interest claim on a taking does not infuse vitality into this claim. There has been no taking in the instant case.
The refusal of the Government to timely honor its settlement agreement with plaintiff was not motivated by malice. Rather, it was prompted (a) by the good faith belief that the negotiations leading to this agreement might not have been conducted at arm’s length and (b) by the discovery that a naval procurement directive appeared to require that the settlement agreement be submitted to cnm for review and clearance. That these were the Government’s motives for refusing to timely honor the settlement agreement has been established by the asbca . In its *530 opinion upholding the validity of this agreement, the asbca found that the Government began questioning the validity of the agreement when[8]
two things happened on 5 March 1971, to wit: (1) [Mr. Underwood] received information through the Deputy Quartermaster General of the Marine Corps, from the Staff investigators of The House Armed Services Subcommittee which raised serious questions in his mind as to the integrity of the negotiations; and (2) he learned of the [naval procurement directive’s] requirement for clearance of which he had not been aware. * * * [Emphasis supplied.]
The asbca found additionally that on or about March 5, 1971, "Mr. Elmore went in to see Mr. Underwood and showed him a copy of [the naval procurement directive] and stated that in his opinion any settlement over $600,000 had to be cleared with cnm. ”
Because of the foregoing circumstances, the Marine Corps declined to timely honor the settlement agreement. Instead, it submitted to the agreement to cnm for review and clearance, and it had new personnel review plaintiffs entire claim under contract NGm-73511. The Marine Corps believed in good faith that these actions were necessary. The fact that the asbca later upheld the validity of the settlement agreement[9] does not change or detract from the fact that these actions were taken in good faith.[10]
We hold, therefore, that the Government has acted in good faith in this case and that there has been no taking. We hold further that 28 U.S.C. § 2516(a) precludes recovery of interest on the amount of the oral settlement agreement.
*531 Certain other deimage items in count I of plaintiffs petition represent "attorneys’ fees and employees’ salaries [incurred by plaintiff] to satisfy government requirements for submissions [of its claim under contract NOm-73511] and to prosecute an appeal from the contracting officer.” Defendant asserts correctly that these items are not recoverable. It is long settled that expenses — whether legal, accounting, secretarial, or other — incurred in prosecuting a contract claim administratively are not compensable. Ramsey v. United States, supra, 121 Ct. Cl. at 434, 101 F. Supp. at 357; Dale Construction Co. v. United States, 168 Ct. Cl. 692, 738 (1964); Dale Construction Co. v. United States, 161 Ct. Cl. 825, 831 (1963); see generally Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240, 265-68 (1975). Plaintiff argues that this principle does not apply here because the Government acted in bad faith. The short answer to this argument is, as held earlier, that the Government acted in good faith.[11]
All of the remaining damage items in count I of the petition can fairly be characterized as a claim for compensation for the general business injury[12] and loss of net worth which plaintiff alleges to have suffered as a consequence of defendant’s breach of contract. None of these damage items are directly related to plaintiffs performance of contract NOm-73511. Hence, they constitute remote or consequential damages, and are not recoverable. William Green Construction Co. v. United States, 201 Ct. Cl. 616, 626, 477 F.2d 930, 936 (1973), cert. denied, 417 U.S. 909 (1974); Dale Construction Co. v. United States, supra, 168 Ct. Cl. at 738, Ramsey v. United States, supra, 121 Ct. Cl. at 434, 101 F. Supp. at 357.
We turn now to count II of the petition. It is phrased as a claim for "monetary restitution to Contractor in such amount as the government has been unjustly enriched.” In substance, count II is an aggregation of two claims: (i) a claim for the difference between the amount of the oral *532 settlement and the amount of plaintiffs original claim under contract NOm-73511[13] and (ii) a claim for interest on the amount of the oral settlement. As we have already dealt with and rejected the latter claim, we consider at this point only claim (i).
Claim (i) is, in effect, an attempt to recover the relinquished component of plaintiffs original claim under contract NOm-73511. As such, claim (i) arises under this contract. Because it arises under this contract, its assertion here is barred by the release which plaintiff executed April 5, 1974.
This result is not harsh. Plaintiff could have pressed claim (i) before the asbca. Instead, it chose to limit the proceedings there to the question whether it was entitled to the amount of the oral settlement. By making this choice, plaintiff relinquished any entitlement which it might have had to the difference between the amount of the oral settlement and the amount of its original administrative claim.
Based on the foregoing considerations, we hold that counts I and II of the petition fail to state a claim upon which relief can be granted.
it is therefore ordered that defendant’s motion for summary judgment is granted and the petition is dismissed.

 Hereafter in the text the claim in this amount will sometimes be referred to as "plaintiffs original administrative claim” or "plaintiffs original claim under contract NOm-73611.”

 The Government acknowledged, in an internal memorandum written shortly after the settlement agreement was reached, that "[a]n important factor in negotiation for the settlement was prompt/expeditious payment by the Government.” Kurz & Root Co., ASBCA No. 17146, 74-1BCA ¶ 10,543 at 49,937.

 Id. at 49,937. In October 1970, the House of Representatives Armed Services Investigating Subcommittee began an investigation of alleged corruption in Marine Corps procurement practices. Hearings were held by the subcommittee on July 20,21, and 22, 1971, during which time the testimony of Mr. Elmore, among others, was taken. In his testimony, Elmore admitted that on numerous occasions he had used for his personal entertainment the credit card of an employee of G. C. Dewey Corporation, a contractor doing business with the Marine Corps at the time. He also admitted having permitted a representative of plaintiff to pay his hotel bill when he made an official trip to plaintiff’s Milwaukee plant in April 1967. Elmore asserted, however, that he had reimbursed both contractors for all expenses involved. At the time of his use of the credit card of the Dewey Corporation employee, it appears that Dewey Corporation was represented in Government contract matters by Mr. Ross. See Report of the Armed Services Investigating Subcomm. of the Comm. on Armed Services, House of Representatives, 92d Cong., 1st Sess., H.RES. 201, Aug. 3, 1971.

 Kurz & Root Co., supra note 2, 74-1 BCA at 49,938.

 Id. at 49,943.

 Namely, whether the release applies to breach claims as well as to claims arising under the contract.

 In its petition, plaintiff does not characterize any of its damage items as being interest on the amount of the settlement agreement. Rather, plaintiff enumerates various interest expenses incurred by it allegedly as a result of defendant’s failure to make prompt payment of the settlement amount. In replying to defendant’s motion for summary judgment, however, plaintiff treats these interest expense items as what, in substance, they are: a claim for interest on the settlement amount.

 Kurz & Root Co., supra note 2, 74-1 BCA at 49,940.

 The arguments which the Government made to the asbca were consistent with the prior conduct of the Marine Corps. The Government argued, in part, that the settlement agreement was not an arm’s length agreement and that it was not binding in the absence of review and clearance by CNM.

 In a similar context, we held:
* * * Even though a court may determine eleven years later that the Government’s premises were faulty, that does not alter the bona fide character of its original actions under the contract or convert the erroneous cancellation of the contract into a talcing. [Footnote omitted.]’’ Acme Process Equip. Co. v. United States, 171 Ct. Cl. 251, 372, 347 F.2d 509, 538 (1965).
Finally, we note that plaintiff has not adduced, by affidavit or otherwise, any evidence that the refusal of the Marine Corps to timely honor the settlement agreement was in bad faith.

 Moreover, plaintiff has cited no statute authorizing this court to award attorney’s fees in cases involving bad faith on the part of the Government. See 28 U.S.C. § 2412 (1976).

 Which includes loss of profits on "1974 contracts” unrelated to contract NOm-73511.

 Plus interest on this difference.