**ESPRIT CORPORATION, INC.**

v.

**The UNITED STATES.**

No. 95–83C.

United States Claims Court.

Nov. 15, 1984.

Alvin S. Nathanson, Boston, Mass., for plaintiff.

Richard F. Silber and Alexander Younger, Washington, D.C., with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

The plaintiff, Esprit Corporation, Inc., brings this action against the defendant, the United States, for interest on price adjustment payments made by the defendant to the plaintiff for work done pursuant to change orders issued by the Contracting Officer. This case is before the Court on cross motions for summary judgment, submitted with oral argument.

## FACTS

On April 7, 1980 the parties entered into a construction contract for miscellaneous and handicapped alterations of the Federal Building, United States Courthouse and Post Office in Concord, New Hampshire. The plaintiff was to be paid $87,461 and was to complete performance within 180 days after receiving notice to proceed. The plaintiff received notice on May 1, 1980.

From July 14, 1980 to November 15, 1981 the plaintiff sent letters to the Contracting Officer informing him of problems and requesting 18 contract modifications. The Contracting Officer accepted all the suggested modifications, but left open the question of contract price adjustments while the plaintiff proceeded with the work in accordance with the change orders. The plaintiff has completed all the work.

The Contracting Officer then sent the plaintiff 18 invoices on which the plaintiff listed a price adjustment proposal for each change order. The Contracting Officer accepted all the proposals, and the defendant has paid all the invoices. The defendant has also paid the plaintiff for two other changes. Complaint, Claims # 16, # 20.

On January 18, 19, and 20, 1982 the plaintiff requested interest under section 12 of the Contract Disputes Act of 1978, 41 U.S.C. § 611 (1982) [CDA], which provides: "Interest on amounts found due contractors on claims shall be paid to the contractor from the date the contracting officer receives the claim pursuant to section 605(a) of this title from the contractor until payment thereof." The plaintiff asserted in the alternative that it was entitled to interest on the price adjustment payments: 1) from the date it submitted the requests for modifications until the date of payment (type I claim); or 2) from the date upon which those payments became unreasonably delayed until the date of payment (type II claim). The Contracting Officer denied these claims on February 26, 1982. The plaintiff reasserts these claims in its motion for summary judgment.

In its cross motion, the defendant contends that the doctrine of accord and satisfaction bars the plaintiff's type I claim. The defendant also contends that neither claim is a claim on which relief can be granted because requests for contract modifications are not "claims" on which interest will accrue under section 12 of the CDA. A "claim" under the CDA must be disputed, the defendant argues. The requests for modifications were never disputed. Therefore, the plaintiff is not entitled to interest under the CDA.

This Court agrees that the plaintiff cannot claim interest under the statute. The Court need not address the defendant's arguments as to accord and satisfaction because the plaintiff cannot demand interest from the government absent contractual or statutory entitlement. 28 U.S.C. § 2516(a) (1982). Therefore, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## DISCUSSION

### Background

In 1969 Congress established the Commission on Government Procurement to examine the existing procurement system. In 1972 the Commission sent Congress twelve recommendations concerning the resolution of contract disputes arising in connection with the performance of a contract. One recommendation was that Congress waive sovereign immunity to permit interest to run against the government in certain circumstances.

■ Because interest cannot run against the government absent contractual or statutory authorization, the Commission noted that contractors had "been unable to recover interest on amounts recovered at the close of a dispute," and concluded that "the goals of the administrative process are frustrated if final payment of a judgment ignores long delays and losses resulting from a mandatory review procedure." 4 Commission on Government Procurement, Report of the Commission on Government Procurement 29 (1972) [Commission Report]. The Senate noted this flaw of the

procurement system when it passed the CDA:

> Since the contractor has been compelled to perform the work with its own money ... there can be no equitable adjustment to the contractor until the contractor recovers the entire cost of the additional work. The cost of money to finance this additional work while pursuing the administrative remedy, normally called interest, is a legitimate cost of performing the additional work.

S.Rep. No. 1118, 95th Cong., 2d Sess. 32, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5235, 5266.

█ The CDA awards the contractor interest "on amounts found due ... on claims...." 41 U.S.C. § 611. The Act does not define the word "claim," but courts have already determined that a demand for interest alone is not a claim under the CDA. *See, e.g., Nab-Lord Associates v. United States*, 230 Ct.Cl. 694, 699, 682 F.2d 940, 944 (1982) (Since the contractor's underlying claim was not subject to the CDA, interest did not accrue on the claim.). *See also Recon Paving, Inc. v. United States*, 745 F.2d 34 at 40 (Fed.Cir.1984) (Interest cannot run on an uncertified demand for more than $50,000 because such a demand is not a "claim" under the CDA.). Therefore, the plaintiff cannot recover interest under section 12 of the CDA unless the requests for contract modifications were "claims."

The Office of Federal Procurement Policy (OFPP) has issued two definitions of the word "claim" as used in the CDA. The first, promulgated on February 26, 1979, defined "claim" as a matter in *dispute*. 44 Fed.Reg. 12,524 (1979). This definition was included in the Disputes Clause of the contract at issue in this case. The final OFPP regulations, effective on June 1, 1980, define "claim" as follows:

> 1(b) (i) As used herein "claim" means a written demand ... seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to the contract.

> (ii) A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim for the purposes of the Act. However, where such submission is subsequently not acted upon in a reasonable time, or disputed either as to liability or amount, it may be converted to a claim under Section 6(a) of the Act as provided in Section 3, below.

45 Fed.Reg. 31,035 (1980), *codified at* 32 C.F.R. § 7–103.12(c) (1983). The plaintiff seeks type I interest under § 1(b)(i) of this regulation, contending that such a claim requires no dispute. The plaintiff seeks type II interest under § 1(b)(ii).

### Type I Claims

The OFPP regulations do not bind this Court, but the Office of Federal Procurement Policy designed them to implement the CDA. They are therefore persuasive evidence of what the CDA means and must be interpreted to further the objectives of the statute. The legislative history, however, shows that Congress wanted interest to run against the Government only when the Government delays in resolving *disputes*.

The purpose of the CDA is "to induce resolution of more contract *disputes* by negotiation prior to litigation; equalize the bargaining power of the parties when a *dispute* exists; [and] provide alternate forums suitable to handle the different types of *disputes*...." S.Rep. No. 1118, 95th Cong., 2d Sess. 1 *reprinted in* 1978 U.S. Code Cong. & Ad.News 5235, 5235 (emphasis added).

The purpose of the interest provision, section 12, is to provide "interest to the contractor upon a favorable decision on his claim ... *following either a final decision of the agency board or a court of competent jurisdiction, or a settlement....*" *Id.* at 32, 1978 U.S.Code Cong. & Ad.News at 5266 (emphasis added). Of course, no federal court can decide a matter that is not in dispute. *E.g., Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324–25, 56 S.Ct. 466, 472–73, 80 L.Ed. 688

(1936). Nor can parties reach a settlement when they have no differences.

Furthermore, to allow interest to run against the government absent a dispute would not serve the purpose of the interest provision of the CDA. The Commission considered the accrual of interest to be an incentive for the government to settle claims short of litigation. 4 Commission Report 29. This purpose is not served by permitting interest to accrue on matters not in dispute, for in such situations there is no prospect of litigation and no need for settlement.

■■■ Waivers of sovereign immunity must be strictly construed. *E.g., Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957). The interest provisions of the CDA waive the sovereign immunity of the United States in order to achieve the aims of Congress. This Court will not expand that waiver beyond what Congress has considered necessary. The plaintiff's requests for contract modifications were never in dispute; they are therefore not claims. *See, e.g., Brookfield Construction Co. v. United States*, 228 Ct.Cl. 551, 564, 661 F.2d 159, 168 (1981). As to the plaintiff's type I claim, the defendant is entitled to summary judgment.

### Type II Claims

■■ The plaintiff also seeks interest on the liquidated price adjustments because of an unreasonable delay in their payment. But the language of the final OFPP regulations is clear and unambiguous. 45 Fed. Reg. 31,035. In order for a liquidated payment to constitute a CDA claim because of an unreasonably delayed payment, section 1(b)(ii) requires that it be converted to a claim "as provided in Section 3." Section 3

requires that such a claim be in writing and be submitted to the Contracting Officer for a decision. Section 12 of the CDA provides that interest accrues from the date such a claim is received by the Contracting Officer to the date of payment. The plaintiff submitted the writing necessary to convert undisputed invoices to claims on January 20, 1982, after it had received payment for all price adjustments but one. The last payment arrived only nine days later. Accordingly, the plaintiff is not entitled to any type II interest.*

### The Plaintiff's Other Claim

■■ The plaintiff alleges that while trying to collect delayed change order payments it incurred about $10,000 of expenses for "letters, meetings, additional job visits, telephone conversations, preparation of proposals and estimates and the like...." Complaint, Claim # 21. But even if the defendant had breached its contract with the plaintiff, "[t]he law is well-settled that, as a general rule, special damages, beyond the amount recognized as legal interest, cannot be recovered for a breach of contract to pay money which results only in a delay in payment." *Ramsey v. United States*, 121 Ct.Cl. 426, 431, 101 F.Supp. 353, 356 (1951), *cert. denied* 343 U.S. 977, 72 S.Ct. 1072, 96 L.Ed. 1369 (1952) (granting the government judgment on the pleadings). The plaintiff's Claim # 21 is dismissed.

### CONCLUSION

For the foregoing reasons, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment. The Clerk will dismiss the complaint.

---

* In a case similar to this one, a Board of Contract Appeals refused to award interest under the Contract Disputes Act when the Government delayed payment of undisputed invoices. The Board noted:

[P]roblems stemming from unreasonable delay in payment of invoices have been expressly dealt with by congress in a subsequent enactment. The Prompt Payment Act, Pub.L.

No. 97–177, 96 Stat. 85 (1982) provides for payment of interest for delayed payments of properly submitted invoices, *although its effective date of October 1, 1982, does not permit its application here.*

*Safeguard Maintenance Corp.*, GSBCA No. 6054, 83–1 BCA ¶ 16,276 at 80,874 (1983) (emphasis added). The plaintiff in this case submitted its claims in January of 1982.